## John V. Farwell Co. and Frank W. Harding v. E. C. Linn, Coroner, for use of David Turnbull, Sheriff, etc.

1. FRAUD—*Rescission of Sales.*—When goods have been purchased upon a credit, and the vendor elects to rescind the sale and recover possession of the goods because of fraud on the part of the vendee, to sustain a recovery, it must appear that the misrepresentation complained of was a material one, that it induced the sale, that it was known by the vendee to be false, and that at the time of going through the form of a purchase he entertained the intention of not paying for the goods.

2. SAME—*The Gist of the Action.*—In an action of replevin for the recovery of goods obtained by fraud, the question as to whether the purchaser expected or intended to pay for them when he purchased them, or whether he intended to cheat the vendor out of them, is the very gist of the fraud.

3. SAME—*False Representations.*—In order to rescind a sale of goods on the ground of false representations, the representations must have been such as were calculated to deceive a person of common prudence and make him the dupe of deception.

Debt, on a replevin bond. Appeal from the Circuit Court of Warren County; the Hon. JOHN J. GLENN, Judge, presiding. Heard in this court at the December term, 1894. Affirmed. Opinion filed May 28, 1895.

### STATEMENT OF FACTS.

About the 25th of March, 1892, Mattias F. Olson, who had been a retail dry goods merchant at McPherson, Kansas, and as such a customer of the John V. Farwell Company, of Chicago, moved his store from that place to Monmouth, Illinois. Carl Olson, his son, was his business manager. The business continued at Monmouth until in January, 1893, when the stock of goods was levied upon and taken possession of by David Turnbull, sheriff of Warren county, by virtue of three executions which issued from judgments recovered in the Circuit Court of said county against Mattias F. Olson, as follows: One in favor of Carl Olson, dated January 3, 1893, for $2,685.95; one in favor of Carrie A. Olson, dated January 3, 1893, for $561.30, and one in favor of the National Bank of Monmouth for $994.17.

On the 13th of January, 1893, while the goods were in possession of the sheriff, the John V. Farwell Company replevied a part of them, valued at $1,348.52, claiming them as goods which had been procured from it on a credit by fraud. The company failed to prosecute its replevin suit, but retained the goods. This suit, in the name of appellee for the use of the sheriff, followed, and a trial was had which resulted in a judgment in his favor for $1,348.52 damages.

MATTHEWS & PEACOCK, attorneys for appellants.

GRIER & STEWART, attorneys for appellee.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This was an action of debt upon a replevin bond and was defended upon the ground that the merits of the case were not determined by trial of the replevin action and that the right to the property replevied was in the John V. Farwell Company.

The claim to the goods set up by the Farwell Company was that they were procured from it on a credit by means of two false and fraudulent credit statements rendered to it by Mattias F. Olson and the subsequent representations of Carl Olson, his son, and the manager of his business, that the credit statements were correct and that it had elected to rescind the contract.

The first of the credit statements was rendered August 20, 1891, and showed Olson's assets to be about $22,806, and liabilities to be about $4,257. The second was rendered February 18, 1892, and showed Olson's assets at $18,625, and liabilities at $1,925.

At the time of rendering the last statement he owed his son, Carl, as overdue salary, $510, but did not include it as one of the liabilities.

On the 8th of March, 1892, Carl Olson went to Chicago, and called at the place of business of the Farwell Company to purchase goods. The credit statement of February 18th was exhibited to him by the credit man and Carl stated that it was correct.

There is no evidence to show that the indebtedness of Mattias F. Olson to Carrie A. Olson was in existence on the 18th of February or the 8th of March, 1892. There is no evidence to show that either of the statements as to assets was false. The only evidence of falsity in the credit statement related to the overdue salary of Carl Olson.

Where goods have been purchased upon a credit and the vendor elects to rescind the sale and recover possession of the goods because of fraud on the part of the vendee, to sustain a recovery it must appear that the misrepresentation complained of was a material one; that it induced the sale; that it was known by the vendee to be false, and that he at the time of going through the form of a purchase entertained the intention not to pay for the goods. Henshaw v. Bryant, 4 Scam. 97; Schwabacker v. Riddle, 99 Ill. 343.

Whether the purchaser expected or intended to pay for the goods when he purchased them or whether he intended to cheat the vendor out of them is the very gist of the fraud.

We do not think the evidence in this case shows such fraud as to authorize a rescission of the contract and a recovery of the goods. It does not appear reasonable that the failure to list the overdue salary of $510 to Carl Olson among the liabilities was sufficient to induce the sale. The credit statement of February 18th showed assets amounting to $18,625, and liabilities amounting to $1,925. Had the $510 item been listed it would have increased the liabilities to $2,435, only leaving the net assets $16,190. We can not believe that a credit man of ordinary prudence who was willing to extend credit to a customer whose liabilities were $1,925, and assets $18,625, would refuse him if the liabilities were $2,435 and the assets $18,625. The false representations must have been such as were calculated to deceive a person of common prudence and make him a dupe of the deception. Henshaw v. Bryant, *supra;* Gregory v. Schoenell, 55 Ind. 101.

There is a total absence of proof that it was the design and intent of Mattias F. Olson, at the time he sent Carl to Chicago in March, never to pay for the goods he might buy; none to show that Carl, at the time he was interviewed by the credit man, had any such intent. Had such been their intent we should certainly have seen a different disposition of the goods from that proven.

We see no error in the instructions. The verdict of the jury was amply sustained by the evidence. Judgment affirmed.