## Robert W. Day v. Charles F. Milligan.

1. FALSE REPRESENTATIONS—*As to Matters of Fact.*—If false representations are made as to matters of fact and the means of knowledge are at hand and equally available to both parties, and the purchaser, instead of resorting to them, trusts to the vendor, the law, as a general rule, will not release him from his own want of ordinary prudence. Especially so when the property is tangible, at hand, and subject to inspection.

2. NEGOTIABLE INSTRUMENTS—*Separate Defenses—Consideration.*— Section 13 of Chapter 98, R. S., entitled "Negotiable Instruments," permits three defenses, viz.: absence of consideration, failure of consideration and partial failure of consideration; these three are separate and distinct defenses and must be so pleaded. Under a plea of total failure of consideration there can not be a defense made on proof of a partial failure of consideration.

**Assumpsit**, on a promissory note. Error to the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding. Heard in this court at the October term, 1897. Affirmed. Opinion filed December 16, 1897.

EDGAR BRONSON TOLMAN, attorney for plaintiff in error.

Where representations relate to a material fact within the knowledge of the person making them, or which he assumes to assert upon his personal knowledge and with respect to which the person to whom the representations are made, has not the personal opportunity or ability to test or verify, the latter has a right to rely on such representations, and in the absence of facts apparent to reason-

ably arouse suspicion and throw doubt upon the truth of the statements, he is not bound to go further and make inquiries in respect thereof.    Endsley v. Johns, 120 Ill. 480.

If the vendor makes misrepresentations to the vendee as to a material fact, and such misrepresentation is made knowingly, for the purpose of deception, under such circumstances as would induce a reasonably prudent man to rely upon the same, the vendor is liable for the fraud and deception practiced.    Antle v. Sexton, 137 Ill. 410; Nolte v. Reichelm, 96 Ill. 425; Hanson v. Busse, 45 Ill. 496; Weatherford v. Fishback, 3 Scam. 170; Hiner v. Richter, 51 Ill. 299.

G. W. & J. T. KRETZINGER and M. F. GALLAGHER, attorneys for defendant in error.

An actionable false representation must be such as is calculated to deceive a person of common prudence and make him the dupe of deception.    Farwell v. Linn, 59 Ill. App. 245.

The facts as to the false representation must be peculiarly within the knowledge of the person charged with deceit, and the means of knowledge and opportunity to verify the statement must be absent.    Hicks v. Stevens, 121 Ill. 194.

A promissory note imports a consideration, and he who alleges a want or failure of consideration must prove it, and if a failure of consideration is relied upon the extent of that failure must be made clearly to appear.    Unless the defendant who pleads failure of consideration shows exactly the amount of the failure, whether total or partial, and if partial, how much, the court can not have any credit or allow any counterclaim.    Sims v. Klein, Breese, 302; Stacker v. Hewitt, 2 Ill. 207; Topper v. Snow, 20 Ill. 434; Honeyman v. Jarvis, 64 Ill. 366; Mitchell v. Deeds, 49 Ill. 416.

MR. PRESIDING JUSTICE ADAMS DELIVERED THE OPINION OF THE COURT.

This was a suit in assumpsit by defendant in error against plaintiff in error on a promissory note made by the latter to the former, of date January 2, 1893, and due November

1, 1893, for the sum of $8,000, and interest.    The defendant
below pleaded the general issue and two special pleas.    The
first plea alleged, substantially, as follows :    That the sole
consideration of said note was the purchase of a one-eighth
interest from the plaintiff in the " Hyde Park Hotel; " that
at the time of the purchase of said interest and the making
of said note, the plaintiff falsely, fraudulently and know-
ingly represented to the defendant that the hotel contained
300 rooms available to be hired to guests at an average price
of $5 per day; that fifty of said rooms had private bath-
rooms attached and were available to be hired to guests at
an average price of $10 per day; that the defendant relied
on said representations, believed the same to be true, did
not know to the contrary, and was deceived thereby, and
that, in consideration of said false and fraudulent consider-
ations, wholly relying thereon and induced thereby, he
made said note as part of the purchase price of said interest
in said hotel.    But defendant avers that the hotel contains
only 213 rooms available for hiring to guests, and that only
thirty-one of said rooms had private bathrooms attached, of
all which the said plaintiff, at the time of making the
said false and fraudulent representations, then and there
had notice, and knew the said representations to be false;
that the earning capacity of the hotel was much less than
it would have been had it contained 300 rooms available for
guests, with fifty of said rooms having private baths attached;
that if the representations had been true, the one-eighth
interest so purchased would have been of great value and
would have produced a profit and income, but that said
hotel, because it contained only 213 rooms, did not produce
a profit, but resulted in a loss of, to wit, $7,000.    Where-
upon the said defendant says that the consideration of said
promissory note has wholly failed.

The second special plea alleges the same facts as the first,
and in addition thereto avers that the defendant's duty, in
connection with the hotel, was to take charge of the corre-
spondence with persons intending to come to the World's
Fair, and to make contracts for the occupancy of rooms in
the hotel; that he was wholly engrossed with his duty as

correspondent, and that with reference to the number of rooms, he relied wholly upon the statement of the plaintiff.

That the plaintiff caused to be prepared printed circulars repeating the representations above referred to, which were furnished to the defendant for use in such correspondence, and that to further carry out his plan of deception plaintiff caused to be put up in the office of said hotel an electric register purporting to contain the number of rooms in said hotel, and also a numbered card-rack purporting to contain the number of rooms in said hotel; and that in each of the cases above mentioned the number of rooms in said hotel was indicated to be as above stated, to wit, the number of 300 rooms; and did also cause all the doors in the halls of the hotel to be numbered, and that doors to the number of 300 were given as separate numbers; whereas some of said doors, which from the halls of the hotel would appear to be the doors of rooms, were doors leading to bath rooms and other rooms not available for the purpose of hiring to guests; and that none of these representations, tricks or devices of the said plaintiff were discovered to be false until the hotel nearly finished the World's Fair season, and a large loss had been made in this business, and the defendant was thereby induced to make careful and diligent search to know why said loss had occurred; in which investigation defendant discovered the facts above stated, that the hotel contained only 213 rooms, of which only thirty-one had private baths. That by reason of the facts last stated the earning capacity of the hotel was much less than it would have been with 300 rooms available for guests, and fifty with private baths attached.

That during all of the World's Fair period all the accommodations of the hotel were in demand, but the fact that the said hotel contained only 182 rooms available for hiring at $5 a day, instead of 250 rooms, as represented by the said plaintiff, made a daily loss of $340; and that the fact that said hotel contained only thirty-one rooms instead of fifty rooms available for hiring at $10 a day, as represented by plaintiff, made a loss of $190 per day; so that the gross earning capacity of said hotel for the period of six months known as

the World's Fair period, from May to November, 1893, was
$95,400 less than it would have been if the hotel had con-
tained the number of rooms which the plaintiff represented
it had; that if the representations had been true, one-eighth
interest would have been of great value; but because the
hotel only contained 213 rooms, the hotel resulted in a loss
of $7,000.

Wherefore defendant saith that the consideration of the
said promissory note hath wholly failed.

A jury was waived and the cause submitted to the court,
and the court found for the plaintiff and assessed his dam-
ages at the sum of $7,725.42, being the amount of the note
and interest, less credits to which the defendant was
entitled, and rendered judgment on the finding. The note
sued on was the last of a series of notes given in pursuance
of the following contract:

" This agreement, made on the second day of January,
1893, between Charles F. Milligan and Robert W. Day,
both of Chicago, witnesseth:

Said Milligan hereby sells and conveys to said Day one-
fourth ($\frac{1}{4}$) of his one-half ($\frac{1}{2}$) interest in the hotel, known as
the Hyde Park, the same being one-eighth ($\frac{1}{8}$) of the entire
property, which includes all good will, lease, furniture,
supplies and goods of every nature, now belonging to the
firm of C. F. Milligan & Co., also cash on hand and bank
account due or to become due, bills receivable, etc., for the
sum of seventeen thousand (17,000) dollars, payable as
follows, without interest, in notes as of even date:

| | |
|---|---:|
| January 2, 1893.....................$ | 500 |
| March 1, 1893........................ | 500 |
| May 1, 1893......................... | 500 |
| June 1, 1893 ........................ | 1,500 |
| July 1, 1893 ........................ | 1,500 |
| August 1, 1893....................... | 1,500 |
| September 1, 1893.................... | 1,500 |
| October 1, 1893...................... | 1,500 |
| November 1, 1893.................... | 8,000 |
| | $17,000 |

Said Day hereby agrees to make to the said Milligan the payments above stated and assume one-eighth ($\frac{1}{8}$) of the present liabilities of the business as shown by the books on this date.

It is further mutually agreed and understood that said Day shall have his said one-eighth ($\frac{1}{8}$) shares of all payments which have been made before this date, in advance, on account of room rent or board to be furnished hereafter.

In witness whereof the parties hereto have set their hands and seals this second day of January, A. D. 1893.

CHAS. F. MILLIGAN.    (Seal.)

ROBERT W. DAY.    (Seal.)"

The Hyde Park Hotel was operated under a lease, and prior to the date of the above-mentioned contract it was owned by the following named persons in the proportions mentioned: Milligan, one-half; Bliss, six-fourteenths; Holbrook, one-fourteenth. Originally Bliss had a half interest, but had sold to Holbrook the one-seventh of his interest. The hotel was conducted under the firm name of C. F. Milligan & Co., and after the sale to plaintiff in error, he, Bliss, Holbrook and Milligan were partners and the members of the firm.

The question whether Milligan, the defendant in error, represented to plaintiff in error that there were 300 guest-rooms in the hotel and that fifty of them had private bathrooms attached, was one of fact to be decided by the trial court acting as a jury. The evidence on that question was conflicting, and if the court had specially found that such representation was not made, we could not say that the finding was so manifestly contrary to the evidence that it should be set aside. Day testified to several conversations between himself and Holbrook, in which he says Holbrook told him that there were 300 rooms in the hotel, fifty of which had private baths attached, and it is claimed by counsel for plaintiff in error that Holbrook was Milligan's agent for the sale of part of his interest, and was authorized by Milligan to so state. The evidence does not support this claim, but on the contrary shows that Hol-

brook was acting as the friend of Day and in promotion of
what he thought to be his own interest.

Appellant testified that he had been acquainted with
plaintiff in error since 1875, was his classmate for two years
at Yale, and a close friend of his, and had full confidence
in his integrity and business ability.   Day tells us that he
first went to dine at the hotel by Mr. Holbrook's invitation,
who stated to him that he was interested in the hotel and
that "*they* wanted a man to take care of the procuring of
guests for the hotel;" that before this he had had a conver-
sation with Holbrook, in which he stated that an interest in
the hotel could be purchased, and made a statement with
regard to the number of rooms and private baths, as averred
in the pleas.   Holbrook testified that he talked to Milligan
about "associating some one else with *us*," and mentioned
Day's name, and that, finally, Milligan authorized him to
offer Day one-fourth of his, Milligan's, interest for $17,000.
This was all the authority Holbrook had, so far as appears
from the evidence.   He had no authority whatever from
Milligan to make any representations about the number of
rooms or anything else.   It is somewhat remarkable that
although plaintiff in error rests his case on alleged
misrepresentations by Milligan, he testified mainly to
representations by Holbrook.   All that he testified bearing
on representations by Milligan, was that at the final meet-
ing, when the terms of the sale were agreed on, " Mr. Mil-
ligan repeated, in substance, the statements, or verified the
statements of Holbrook."   This seems to be a conclusion of
the witness.   He testified specifically to what Holbrook
had said, but he utterly failed to testify what Milligan said,
if anything, about the number of the rooms.   He did testify
that Holbrook said, at that interview, " This hotel has 300
rooms; we can figure that the rooms will earn $5 per day,
and that this earning can be a net amount, because the din-
ing room will take care of the expenses of the hotel," and
turned to Milligan and asked if that was not so, and he said,
yes.   Holbrook further manifested his interest in plaintiff
in error by endorsing all of his notes for the purchase

money, including the note sued on, at the time of their execution and delivery to defendant in error, thus assuming a liability which deprives him of the character of a disinterested witness in the case. He testified more strongly in regard to the alleged representations by Milligan than did plaintiff in error himself. Milligan testified positively that he never told Holbrook or Day how many rooms there were in the hotel, that the question was never discussed between Holbrook and him, also that Holbrook mentioned Day to him and said he would like to get him interested in the hotel, and wanted to know if he, Milligan, would sell to Day part of his interest. The evidence, in short, with regard to the alleged misrepresentations, was such that the court, or a jury, might have found either way.

But even though the court had found from the evidence that the alleged misrepresentations were made, there is sufficient evidence to support a finding that the plaintiff in error did not wholly rely thereon, as averred in his pleas, or that the representations were not such as were calculated to deceive a person of common prudence, and, therefore, the plaintiff in error should not have relied on them.

Plaintiff in error testified that before making the contract he examined the books and knew what the hotel had earned up to the time of such examination; that he knew everything except the number of the rooms. He further testified that, about the last of February, 1893, he discovered that there were only about 213 rooms, only thirty-one or thirty-two of which had bathrooms attached, and that, almost immediately after such discovery, there was a meeting of all the partners, at which Milligan was present, and that he said nothing at that meeting about misrepresentation as to the number of rooms, nor does it appear from the evidence that he complained to Milligan of any such misrepresentation prior to the bringing of this suit. Seven of the notes given for the purchase money fell due after the time when plaintiff in error says he discovered the shortage in rooms, which he paid, without protest, from his

part of the earnings of the hotel. Some of the payments credited on the note in suit were credited from his share of the profits, but plaintiff in error says he is not certain that all were, that he may have given his check for some of them. He acted in the business from January 2, 1893, until the business was closed out in December, 1893, precisely as he would have acted if the alleged misrepresentations had not been made, or as if he placed no reliance on them, if made, and received during that time $11,000 as his share of the profits, and $2,300 as salary for his personal services in the business.

Plaintiff in error was at the hotel a number of times before the contract was made. At the first visit he says he saw the first floor, dining room, office and billiard room; at another time, he says that he presumes that he and Holbrook went to the second floor or further, that he thinks they went on the roof. Holbrook, who was a partner in the hotel business, says that when he introduced plaintiff in error to Milligan, which was after he had communicated to Day that Milligan would sell for $17,000, he told Day, in Milligan's presence, that he could look over the hotel and see what it was. Milligan says that after he was introduced to Day, Holbrook had Day down to dinner, and that Holbrook took the keys from the office, and he supposes showed Day the house. It does not appear from the evidence, nor is it claimed, that Day asked Milligan to show the rooms. The only reason plaintiff in error assigns for his failure to examine the rooms is that he could not do so without disturbing the guests; but his own evidence shows conclusively that he could have ascertained the number of the rooms and private baths, without any disturbance of guests. He says that when, in the latter part of February or about the first of March, he discovered there were not 300 rooms in the hotel, he procured the plans of the building, and from them ascertained the number of rooms and private baths in the hotel. It is obvious that he might have done the same thing prior to the date of his contract.

The false representations must have been such as were

calculated to deceive a person of common prudence. Farwell Co. v. Linn, 59 Ill. App. 245.

"If false representations are made as to matters of fact, and the means of knowledge are at hand, and equally available to both parties, and the purchaser, instead of resorting to them, trusts to the vendor, the law, as a general rule, will not relieve him from his own want of ordinary prudence. (Cooley on Torts, 487.) This is the case when the property is tangible and is at hand and subject to inspection." Hicks v. Stevens, 121 Ill. 186.

It is alleged in the pleas that the sole consideration for the note in suit "was the purchase by the said defendant from the said plaintiff of a one-eighth interest in the hotel," and that the consideration has wholly failed.

It appears from the contract that the consideration for the purchase money, $17,000, evidenced by nine promissory notes, was the sale to plaintiff in error of one-eighth interest in the hotel, and the evidence fails to show a total failure of consideration as pleaded.

Section 13, chapter 98 of the statute, permits three defenses, viz.: absence of consideration; total failure of consideration; partial failure of consideration; and these three are separate and distinct defenses, and must be so pleaded; so that, under a plea of total failure of consideration, there can not be a recovery on proof of partial failure. Wadhams v. Swan, 109 Ill. 46; Belden v. Church, 23 Ill. App. 473.

The utmost that plaintiff in error could claim, if anything, on the evidence, is that there was a partial failure of consideration as to the whole of the purchase money, and as nine notes were given for the purchase money, there would be in such case a partial failure as to each note; for instance, if the failure amounted to twenty per cent of the whole purchase money, the failure as to each note would be twenty per cent of the face of the note; and under a plea averring partial failure of consideration as to the whole purchase money, if it appeared that such failure of twenty per cent of the whole was equal to the amount due on the note in

suit, it would be a complete defense to the note. This is illustrated in the case of Oertel v. Schroeder et al., 48 Ill. 133, relied on by counsel for plaintiff in error. In that case the defendant had purchased certain property for the sum of $6,000. He paid $4,000 cash and gave his note for $2,000. There was a partial failure of consideration, part of the property sold not being merchantable, as it had been represented or warranted to be by the vendor. The maker of the note pleaded, first, a total failure of consideration, but afterward, by leave of court, filed a plea of partial failure of consideration, which was sustained on appeal.

We find no error in the refusal of propositions submitted by plaintiff in error to the trial court, to be held as law in the case. The judgment is affirmed.

WINDES, J., took no part in this decision.