SETH WADHAMS

*v.*

ETHEL L. SWAN.

*Filed at Ottawa January 23, 1884.*

1. PLEADING—*special plea, faulty as being argumentative—and as amounting only to the general issue.* In a suit on a note given for the purchase money of land which had been sold and conveyed by a minor, and which was not to be paid until the payee, after full age, should confirm her former deed, the declaration alleged that the plaintiff, "when she became of age, to-wit, on, etc., made and delivered to defendant her certain deed, wherein she did ratify the deed first above mentioned." The defendant, in one of his pleas, alleged "that the plaintiff has failed to confirm the sale of said land to the defendant:" *Held,* that the plea was defective in form, as being at most but an argumentative denial of the allegation in the declaration, and as failing to put in issue the alleged fact that the plaintiff, after becoming of age, executed and delivered to the defendant a deed, wherein, etc., and also that the plea amounted to the general issue, only.

2. A plea seeking to put in issue a fact the plaintiff is bound to prove under the general issue in order to recover, amounts only to the general issue, and for that reason is bad on special demurrer, or should be stricken from the files, on motion. But such defect in the plea is not reached by general demurrer.

3. PLEADING AND EVIDENCE—*proof of total or partial failure of consideration.* A defendant can not, under a plea of no consideration, or total failure of consideration, show a partial failure, nor can he, under a plea of total failure of consideration, show there was no consideration.

4. SAME—*recoupment, under special plea.* A partial reduction of damages by recoupment can not be shown under a special plea in bar, but may be availed of under the general issue.

5. RECOUPMENT—*definition.* Recoupment, in the strict common law sense, is a mere reduction of the damages claimed by the plaintiff, by proof, under the general issue, of mitigating circumstances connected with or growing out of the transaction upon which the plaintiff's claim is based, showing that it would be contrary to equity and good conscience to suffer the plaintiff to recover the full amount of his claim.

6. ERROR *will not always reverse—demurrer to plea improperly sustained.* The sustaining of a demurrer to a special plea which amounts to no more than the general issue, where the very question raised by the plea, with the proofs in support thereof, are presented by the record independent of such plea, affords no sufficient ground for a reversal, even if the demurrer was improperly sustained.

7. PRACTICE—*propositions of law to court trying cause without a jury.* Propositions of law presented to a court trying a case without a jury, should state the law applicable to the case made by the evidence and pleadings, in reasonably accurate terms. Like instructions, when mere abstract propositions of law not pertinent to the proofs or the issues, or when based upon a hypothetical fact or state of facts not warranted by the evidence, they should be refused.

8. SALE OF LAND—*as to quantity—boundaries, as controlling quantity—representations as to number of acres.* On a sale of land by its proper numbers, or other specific description by which its boundaries are made certain, for a sum in gross, the boundaries, when ascertained, will control in case of a discrepancy as to the quantity or number of acres; and in such case neither the purchaser nor the vendor will have a remedy against the other for any excess or deficiency in the quantity stated, unless such excess or deficiency is so great as to raise a presumption of fraud.

9. In the absence of any fraudulent representations on the sale of an entire tract of land by metes and bounds, for a gross sum, neither party will be bound by a statement as to the quantity or number of acres contained in the tract, except when such statement is expressly, or by necessary implication, made the essence of the contract.

10. But if the seller warrants the tract, either expressly or by necessary implication, to contain a certain number of acres, or when the sale is by the acre, and the seller makes a misrepresentation as to the number, the latter will, as in any other case of a breach of contract, be liable; and in an action by him for the purchase money, the amount of the deficit at the contract price may be recouped.

11. SAME—*whether sale by the acre, or as an entirety—as shown by the deed.* A conveyance described the land as the south one-third of section 17, etc., and showed the consideration to be $26,666.66: *Held,* that such deed showed a sale of the tract as an entirety, for a gross sum, and not by the acre.

12. COVENANTS FOR TITLE—*when covenant becomes broken, so that an action will lie.* Where a party makes a conveyance of an entire tract of land, with the usual covenants of warranty as to title, and against incumbrances, not having the title to a certain portion thereof then being occupied and used as a right of way by a railway corporation, the covenants will be broken immediately, and the grantee entitled to an action thereon, although he may have known, at the time, of the defect in the title.

13. MEASURE OF DAMAGES—*breach of covenant against incumbrance.* Where an entire tract of land is sold and conveyed by deed, with covenants of warranty against incumbrances, etc., and there is an incumbrance on the same, consisting of a right of way through the same occupied by a railway company, which, when considered with reference to the tract as an entirety, enhances rather than diminishes its value, the grantee will be entitled only to nominal damages for the technical breach of the covenant.

14. AFTER-ACQUIRED TITLE—*when it inures to grantee.* A minor and her mother conveyed a tract of land through which a railway company had a right of way, which was reserved in the conveyance to the minor heir's father, the deed of the minor and her mother containing the usual covenants of warranty. Afterward, and before any action was brought on the covenants of warranty, the owner of the legal title of the strip of land occupied as a right of way, conveyed, by quitclaim deed, all his interest in such strip of land to the mother: *Held,* that the effect of this latter conveyance was to vest in the first grantee, by way of estoppel, the legal title to the part used as a right of way, subject to the easement of the railway company.

15. PAROL EVIDENCE—*where the contract is in writing.* Where a contract is made in writing, the writing affords the only competent evidence of what the contract is. Parol evidence as to the agreement can not be considered.

16. CONSIDERATION—*defences in respect thereto.* The statute, with certain limitations, allows a defendant, when sued upon a promissory note, etc., to interpose as a defence, either a want of consideration, or a total or partial failure of consideration. These defences are distinct, and must be pleaded separately.

APPEAL from the Appellate Court for the First District;—
heard in that court on appeal from the Superior Court of
Cook county; the Hon. JOSEPH E. GARY, Judge, presiding.

On the 22d of June, 1861, George E. Cook, being the
owner in fee of section 17, town 36 north, range 14 east, in
Cook county, subject to the right of way of the Illinois Cen-
tral Railroad Company, whose line of road passed through
and over a part thereof, including the south third of said
section, by deed of that date conveyed the same, except so
much as was occupied by the railroad, to Robert Innes, who
died intestate prior to August 1, 1872, leaving Catharine A.
Innes, his widow, and three daughters, his only heirs. In a
partition proceeding between them, the south third of this
section was allotted to Ethel L. Innes, now Ethel L. Swan,
the appellee in this case. On the 19th of August, 1873,
Ethel L. Innes, for the consideration of $26,666.66, conveyed
by warranty deed, with full covenants of title, the said south
third of the section to Seth Wadhams, the appellant, the
said Catharine A. Innes, her mother, joining in the deed as
a grantor. At the time of this conveyance the said Ethel
was a minor, and did not attain her majority until in August,
1874. For the deferred payments on this purchase Wad-
hams gave to the said Ethel his two notes, of the same date
of the conveyance, for the sum of $10,666.66 each, which were
secured by a deed of trust on the property, from Wadhams
to William H. Holden, trustee, the trust deed containing this
recital: "Said notes are given for the purchase money that
is to be paid for said land, and said Ethel L. Innes is to con-
firm the sale of said land immediately upon her arriving at
full age, and if she fails or refuses to do so, said notes may
not be paid until she does confirm the sale, and this trust
deed shall not be foreclosed until said sale is confirmed by
said Ethel L. Innes." The note now sued on is one of the
notes secured by said trust deed, and matured on the 19th of

4—109 ILL.

August, 1876.  After appellee attained her majority, to-wit, on the 22d of August, 1874, she executed another deed ratifying her former conveyance, in conformity with her agreement as set forth in the trust deed.

It is conceded the strip of ground occupied by the railroad of the Illinois Central on the south third of the section, and which was excepted from the operation of Cook's deed to Innes, contains 8.72 acres, and that fences on either side thereof have been continuously maintained by the railroad company for the last fifteen years.  It is also admitted the railroad was constructed at its present location across the section prior to July, 1854, and while the land belonged to the United States.  The conveyance of the south third by Ethel to Wadhams, as above stated, was in pursuance of a contract of sale made by her and her two sisters to him, of the entire section, for the sum of $80,000, which, assuming the section contained just 640 acres, (the estimated quantity by government survey,) would make $125 per acre.  The section, however, contains 646 acres, being an excess of six acres over that amount.  When the note sued on matured, the appellant declined to pay the full amount, on the ground, as he claimed, the land was purchased by the acre, and as the 8.72 acres of it covered by the right of way of the Illinois Central was of no value to him, there was a breach of appellee's covenants in her conveyances, and a consequent failure of consideration of the note sued on to the amount of $1090, this sum being, as is claimed by appellant, the estimated value of the 8.72 acres of land, at $125 an acre.  After some controversy, it was agreed that appellant should pay to appellee the whole of the note, excepting this balance of $1090, and interest thereon, which was to be without prejudice to either party, and it was accordingly done.  It also appears the said George E. Cook executed a deed to the said Catharine A. Innes, bearing date August 30, 1880, of all his interest in so much of the said section 17 as is occupied by

the Illinois Central railroad, and which is subject to the easement of said company. The present suit is brought on the note maturing August 19, 1876, to recover the above balance.

The declaration contains three counts,—the first, a special count, setting out all the facts as above stated; the second, a special count on the note, without setting out the facts specially; third, the consolidated common count. To the declaration the defendant filed three pleas: First, general issue; second, that the plaintiff had failed to confirm the sale of land to the defendant; third, that the consideration of the note, to the extent of the unpaid balance, had failed, by reason of the Illinois Central's right of way over the land. Issues were joined on the first and third pleas, and a demurrer was sustained to the second. The cause was tried by the court without a jury, resulting in a judgment for the plaintiff for the unpaid balance on the note, which, on appeal, was affirmed by the Appellate Court for the First District, and Wadhams brings the case here for review.

Messrs. HOLDEN & FARSON, for the appellant:

A contract to convey land by a good and sufficient warranty deed, is not satisfied by a good and sufficient warranty deed which conveys no title, or an incumbered one. *Conway* v. *Case*, 22 Ill. 127.

Where a good title to land is the only consideration for a note, and no good or beneficial title can be made, no recovery can be had on the note. This defence may be availed of by way of a plea of failure of consideration, or want of consideration, or by way of recoupment. *Schuchmann* v. *Knœbel*, 27 Ill. 177; *Streeter* v. *Streeter*, 43 id. 163; *Peck* v. *Brewer*, 48 id. 62; *White* v. *Sutherland*, 64 id. 192; *Waterman* v. *Clark*, 76 id. 431; *Oertel* v. *Schrœder*, 48 id. 133; *Wilson* v. *Wood*, 27 id. 203.

The consideration of the note has failed to the value of the estate which the defendant did not and can not enjoy. *Christy* v. *Ogle's Heirs,* 33 Ill. 298.

Under the evidence the title to the right of way, subject to the easement, is worthless, and consequently we are entitled to recoup the purchase price paid for the title free from such easement. *Major* v. *Dunnavent,* 25 Ill. 262; *Weber* v. *Anderson,* 73 id. 439; *Wood* v. *Kingston Coal Co.* 48 id. 356.

We are at liberty to show just what the consideration was, and how it was arrived at, when it was stated at a gross sum in the deed. *Sidders* v. *Riley,* 22 Ill. 109; *Booth* v. *Hynes,* 54 id. 363; *Kinzie* v. *Pearson,* 2 Scam. 515; *Richardson* v. *Clow,* 8 Bradw. 91; *Belden* v. *Seymour,* 8 Conn. 304; *Lawton* v. *Buckingham,* 15 Iowa, 22; *Wilkinson* v. *Scott,* 17 Mass. 249; *Kimber* v. *Ferguson,* 7 Minn. 442; *Irvine* v. *McKeon,* 23 Cal. 475; *Coles* v. *Solsby,* 21 id. 47; *Bingham* v. *Weiderwax,* 1 Conn. 514; *McCrea* v. *Purmost,* 16 Wend. 460; *Morse* v. *Shattuck,* 4 N. H. 229.

As to defendant's right to recoup the damages growing out of the plaintiff's inability to make a title free from incumbrance, see *Brigham* v. *Hawley,* 17 Ill. 39; *Waterman* v. *Clark,* 76 id. 430; *Bross* v. *Cairo and Vincennes R. R. Co.* 9 Bradw. 366; *Oertel* v. *Schrœder,* 48 Ill. 136.

The real consideration of the note was the estate bought, and not the bond or covenant for title. *Mason* v. *Wait,* 4 Scam. 134; *Hall* v. *Perkins,* 4 id. 548; *Schuchmann* v. *Knœbel,* 27 Ill. 177; *Deal* v. *Dodge,* 26 id. 460; *Davis* v. *McVickers,* 11 id. 328; *Lull* v. *Stone,* 37 id. 229.

Mr. JOHN SHOWALTER, for the appellee:

The right of way of a railroad corporation, whether it be spoken of as an irrevocable license, or as an easement, is an incumbrance, merely. *Quimby* v. *Vermont Central R. R. Co.* 23 Vt. 387; *Richardson* v. *Palmer,* 38 N. H. 212; *Beach* v.

*Miller,* 51 Ill. 208; *Dobbins* v. *Brown,* 12 Pa. St. 80; Rawle on Covenants, 79, 100.

The grantee of an entire tract, part of which is thus incumbered, has his action on the covenant against incumbrances, and the measure of damages is the injury to the market value of the entire tract by reason of the incumbrance. If there be no injury, only nominal damages can be recovered. *Stevenson* v. *Loehr,* 57 Ill. 509; *Weatherbee* v. *Bennett,* 2 Allen, 428.

No action lies on a covenant against incumbrance on account of a public easement over the land conveyed, the purchaser being bound to take notice thereof. *Bailey* v. *Miltenberger,* 31 Pa. St. 41; *Tongue* v. *Spring,* 9 Mass. 28.

On the one hand the incumbrance is not a breach of the covenant, on the other it occasions no injury to the defendant.

In addition to the usual covenants, a deed may contain a covenant as to the quantity of ground,—an engagement, for instance, that the tract described contains a given number of acres. Such a covenant has no bearing upon the matter of title. Neither do covenants for title have any reference to the quantity of ground in the tract conveyed. 3 Washburn on Real Prop. (3d ed.) 418; Rawle on Covenants, (3d ed.) 524; *Boxley* v. *Stevens,* 31 Mo. 201.


Mr. JUSTICE MULKEY delivered the opinion of the Court:

Whether the Superior Court ruled correctly in sustaining a demurrer to the defendant's second plea, is the first question presented by the record for determination. The allegation in the declaration which was sought to be put in issue by the second plea, is in these words: "Plaintiff avers that afterwards, and when she became of age, to-wit, on the 22d day of August, 1874, at, etc., plaintiff made and delivered to defendant her certain deed, wherein she did ratify the deed first above mentioned." The plea alleges "that the plaintiff has failed to confirm the sale of said land to the defendant."

Taking the most liberal view of the plea, it is certainly but an argumentative denial of the allegation in the declaration, and is defective for that reason. (5 Rob. Prac. 208.) It also fails to put in issue so much of the allegation to which it is pleaded as an answer, as charges that the plaintiff, after she became of age, on a specified day, executed and delivered to the defendant a deed, wherein, etc. The traverse, in this respect, is too narrow,—a well recognized fault in pleading. (Ibid. 205.) Assuming that it was not obnoxious to any of the objections we have just specified, it but seeks to put in issue a fact which the plaintiff would have been bound to prove under the general issue, in order to recover under the first count of the declaration, and such being the case, the plea therefore amounted to the general issue, and would, on motion, have been stricken from the files, and was clearly bad on special demurrer. (Ibid. 218.) The demurrer, however, was general, and did not, therefore, reach the objection last stated. Whether the other objections to the plea were available on general demurrer, it is not necessary to inquire, for, assuming they were not, and that there was therefore a technical error in sustaining the demurrer to the plea, it is clear the appellant has not been thereby prejudiced, for the general issue was in, and as effectually put in issue the allegation in the declaration to which the plea related as the plea itself possibly could have done, even had it been broader than it was, and the deed of confirmation was put in evidence under the issue thus formed, so that the very question raised by the plea, together with the proofs in support of it, are directly presented by the record before us. It is therefore clear the appellant has been deprived of no right by reason of sustaining the demurrer to the plea.

The next and the main question presented for determination arises upon certain propositions which the court refused, on the trial, to hold as the law applicable to the case. Numerous propositions were presented and refused, but no

special complaint is made of the court's ruling, except as to the first, third, fourth and fifth propositions, all of which, in effect, raise the same question, and will therefore be considered together. They are as follows:

"1.    That the defendant in a suit on a note given for the purchase money for land, having taken, in his deed from the plaintiff of the land, covenants such as the defendant has from the plaintiff in this case, is entitled to recoup so much of the note as represents the purchase money for the land the title to which is encumbered by the right of way of the Illinois Central Railroad Company, where it is shown that the rights of said company in the right of way render the title thereto, subject to such rights, worthless.

"3.    That in this case the defendant is not precluded from asserting a recoupment of the purchase money paid for the land in the right of way, by reason of the balance of the land conveyed being benefited by the location of the railroad upon the right of way.

"4.    That the defendant is entitled to a credit on the note, as of its date, of the value of the estate of the Illinois Central Railroad Company in the land embraced in its right of way, not exceeding the purchase price therefor.

"5.    That the defendant is entitled to a credit on the note, as of its date, by the way of recoupment of the value of the estate of the Illinois Central Railroad Company in the right of way occupied by it on the land embraced in plaintiff's deeds to defendant."

With respect to such propositions it may be stated, in general terms, they should always state the law applicable to the case made by the evidence and pleadings, in reasonably accurate terms, otherwise they should not be given. Like instructions, when mere abstract propositions of law not pertinent to the proofs or issues in the case, or when based upon a hypothetical fact or state of facts not warranted by the evidence, they should be refused. Of the latter class we regard

all the above propositions, and the court therefore properly refused them. They are severally drawn, with more or less distinctness, upon the hypothesis that by the terms of the sale of this land to appellant the consideration paid and agreed to be paid was, in law and in fact, apportioned and divided into as many distinct and equal sums as there were acres of ground, and that these distinct and equal sums were severally paid, and agreed to be paid, for the several acres contained in the entire tract, and that upon the failure of title to any one or more acres of the land, the appellant, by operation of law, became exonerated from the payment of so much of the consideration as appertained or belonged to the acre or acres of land the title of which had so failed,—or, more shortly put, they are drawn upon the theory that the tract of land was not sold as an entirety, but that in law and in fact there was a several sale of each acre, or a sale by the acre, of the entire tract, for $125 an acre. Following this idea with considerable warmth, and apparently great confidence, to its logical results, appellant very naturally reaches the conclusion that whether the facts in this case be regarded as showing a failure of title to 8.72 acres occupied by the railroad, or a mere easement thereon of indefinite duration, thereby rendering it worthless as a distinct property, the loss is the same in either case, and the consideration of the note has therefore failed to the extent of the amount agreed to be paid for that part of the land, namely, $1090, being the balance on the note for which this suit is brought. Now, it is hardly necessary to say, if this postulate, upon which appellant's entire argument is based, has no foundation in the record, all conclusions drawn from it must fall with the postulate itself. But before passing upon this question, let us see what the general rules of law are relating to quantity or acreage upon the sale of a tract of land.

The general rule unquestionably is, that where a tract of land is sold for a sum in gross, by its proper numbers, as

indicated by the government survey, or by any other specific description by which its exact boundaries are or may be determined, the boundaries to be thus ascertained, in case of a discrepancy, will control the description as to the quantity or number of acres, and in such case neither the purchaser nor the vendor will have a remedy against the other for any excess or deficiency in the quantity stated, unless such excess or deficiency is so great as to raise a presumption of fraud. (*Jackson* v. *Moore*, 6 Cow. 717 ; *Noble* v. *Googins*, 99 Mass. 231.)　It may be stated as a limitation on the above proposition, that assuming the parties to be acting in good faith, and that there has been no fraudulent misrepresentation of any kind, upon a sale of an entire tract of land by metes and bounds, for a gross sum, neither party will be bound by a statement as to the quantity or number of acres contained in the tract, except where such statement is expressly, or by necessary implication, made the essence of the contract.　Of course, where the seller warrants the tract, either expressly or by necessary implication, to contain a certain number of acres, or, which amounts to the same thing, where the sale is by the acre, and the seller makes a misrepresentation as to the number, the latter will, as in any other case of a breach of contract, be liable, and in an action by him for the purchase money the amount of the deficit at the contract price may be recouped.　*Waterman* v. *Clark*, 76 Ill. 428.

Keeping in view these well recognized principles, let us look at the rights of the parties to this litigation in the light of the facts already appearing, and such as will be developed by the further consideration of the case.　As Cook excepted from the operation of his deed to Innes, the father of Ethel, all this land in said section 17 covered by the railroad company's right of way, including the 8.72 acres in question, it follows she had no title to that part of the south third of the section at the time of the conveyance by herself and mother to appellant, on the 19th of August, 1873, as heretofore stated,

nor did she have any title to it at the time of her deed of confirmation to him after she attained her majority. It follows, therefore, that the covenants in both those deeds for title, and against incumbrances, were broken on the delivery of those deeds, and the appellant thereby acquired an immediate right of action; and the fact that appellant knew, at the time these deeds were respectively delivered, there was a defect in the title as to so much of the land as was occupied by the railroad, makes no difference in this respect. (*Beach* v. *Miller*, 51 Ill. 206.) Before any steps, however, had been taken by appellant to enforce this liability, to-wit, on the 30th of August, 1880, Cook, as we have already seen, conveyed to Mrs. Catharine A. Innes, appellee's mother, by quitclaim deed, all his interest in the land occupied by the railroad in said section 17, which, of course, included the 8.72 acres in question. The effect of this conveyance, as we hold, was to confer upon appellant, by way of estoppel, the legal title to this 8.72 acres of land, subject to the easement of the railroad company. (*Beach* v. *Miller*, *supra.*) Now, if the effect of the occupation and permanent use of the railroad strip is to be limited exclusively to the 8.72 acres in question, then it is clear the appellant has sustained a substantial injury by reason of the easement; but if, on the other hand, the occupation and permanent use of this land for railroad purposes are to be considered with reference to the whole tract viewed as an entirety, then it is equally clear appellee is only technically liable for a nominal sum, for it is very obvious, from the testimony, the value of the land, considered as an entirety, was and is greatly enhanced by reason of the railroad being located and operated where it is.

This brings us to a consideration of the question whether there is anything in the record that warrants appellant's assumption, throughout the entire argument, that this land was sold to him by the acre. Looking at this question as one merely of fact, we might content ourselves by saying that

it has been conclusively settled against him by the affirmance
of the judgment in the Appellate Court. But inasmuch as
the refused propositions of law above cited were asked upon
the hypothesis that the sale of the land was by the acre, and
not as an entirety, it is not improper to inquire, with some
particularity, upon what the hypothesis in question is based;
for if, in legal contemplation, there is no legitimate proof
tending to establish it, it is clear the propositions in question
were properly refused. In every sale and transfer of land
from one adult person to another, where the parties are capa-
ble of contracting, there is of necessity a provisional or ante-
cedent agreement fixing the terms and conditions upon which
the transfer is to be made. This agreement, as a general
rule, with us, is merely verbal, but it is often in writing. It
was in writing in this case, and of course the writing affords
the only competent evidence of what that agreement was.

As already appears, the appellee and her two sisters made
a joint sale to the appellant of the entire section. The con-
tract of sale, as just stated, is in writing, and bears the same
date as appellee's first deed to appellant, namely, August 19,
1873, and the two instruments are but parts of the same
transaction. By reference to the contract itself, we find that
after setting forth the names of the respective parties, it
proceeds in these words: "The party of the first part sell,
and hereby agree to convey, by good and sufficient warranty
deed or deeds, to the party of the second part, (and furnish
abstract showing good and sufficient title,) the following
described land, to-wit: Section seventeen (17), township
thirty-six north, range fourteen (14) east, of the 3d P. M.,
in Cook county, Illinois, for the sum of eighty thousand dol-
lars ($80,000), which the party of the second part agrees to
pay," etc. This contract nowhere contains the slightest inti-
mation that the land was sold by the acre, but on the con-
trary, as appears above, it shows beyond all cavil it was sold
as an entirety, for the gross sum of $80,000. On turning to

the deed of appellee and her mother, to appellant, for her third of the land, we find that it recites, in substance, that they, for the consideration of $26,666.66, thereby conveyed to him "all the following described lot, piece or parcel of land, situated in the county of Cook and State of Illinois, and known and described as follows, to-wit: The south one-third ($\frac{1}{3}$) of section seventeen (17), township thirty-six north, range 14 east," etc. This deed, so far from showing a conveyance of land at a specific sum an acre, does not so much as contain the word acre or acres in it. So of appellee's deed of confirmation of August 22, 1874. In short, these deeds and the above contract show conclusively there is not, in contemplation of law, the slightest foundation for the claim of appellant that the land was sold by the acre. The fact that appellant was permitted to swear, on the trial, the land was so sold, can make no difference in that respect. The real contract was reduced to writing, and it can not therefore be contradicted or limited in that manner. It is a familiar doctrine that parol evidence is inadmissible for such a purpose, and the fact it was improperly admitted can make no difference here.

Upon the record before us we assume the Appellate Court must have found, as matters of fact and of law, that the land was sold as an entirety, for a gross sum; that appellant, by means of the several conveyances heretofore mentioned, acquired, before the commencement of this suit, the legal title to the whole of the land purchased of appellee, subject to the easement of the Illinois Central Railroad Company; that while the existence of this easement was a technical breach of appellee's covenants against incumbrances, and consequently entitled appellant to nominal damages, yet its effect upon the land, considered as an entirety, enhanced rather than diminished its value, so that appellant was really benefited rather than injured by it. In all these findings we fully concur with the Appellate Court, and in so far as they are

findings of fact, they are conclusive on this court, whether we were satisfied or not.

Had the appellant seen proper, under these circumstances, to have brought an original action for the technical breach of the covenants against incumbrances, he would have been entitled to nominal damages, merely, which might well have been fixed at a single cent. He elected, however, to set up this right of action as a defence to the present suit. It is relied on to support appellant's third plea, which is a plea of total failure of consideration of the note as to the unpaid balance for which the suit was brought. The proofs clearly do not sustain this statutory defence, as we have just seen. We say statutory, for by the common law such a plea to a promissory note is not admissible at all. Our statute, however, with certain limitations, allows the defendant in such an action to interpose as a defence either a want of consideration or a total or partial failure of consideration. Now, these are three distinct defences, and to be made available they must be pleaded specially. The defendant is not permitted to set up one of those defences in his plea, and prove another under it. If there has been only a partial failure of the consideration, as was the case here, and that a mere nominal sum, it should have been pleaded, so far as the third plea is concerned, as a partial defence to the action, so as to have enabled the plaintiff, in case no other plea had been filed, to have taken judgment as to the part not answered by the plea. On the other hand, under a plea of total failure of consideration, the defendant will not be permitted to show a partial failure, or that the instrument was given without consideration. All these positions are fully sustained by the authorities. The plea in question being one of total failure of consideration, as already said, the proofs did not sustain it.

If it be suggested that the plea in question is a mere plea of recoupment, and, as such, appellant's damages were prov-

able under it whether they existed to the extent claimed by the plea or not, we submit the authorities do not sustain the position. Recoupment, in its strict common law sense, is a mere reduction of the damages claimed by the plaintiff, by proof, under the general issue, of mitigating circumstances connected with or growing out of the transaction upon which the plaintiff's claim is based, showing that it would be contrary to equity and good conscience to suffer the plaintiff to recover the full amount of his claim. (5 Rob. Prac. 265.) But the same object is sometimes attained where it is supposed the defendant's damages are equal to or in excess of the plaintiff's demand, by setting up the mitigating circumstances in a special plea in bar of the plaintiff's entire cause of action, without pleading the general issue at all. *Waterman* v. *Clark et al. supra,* affords an instance of a plea of this character, yet it is well settled a partial reduction of damages can not be shown under a plea of this kind, (7 Wait's Actions and Defences, 555,) no more than a partial failure of consideration can be shown under a plea of total failure, or *vice versa.* While, by reason of the general issue having been filed, there can be no question as to the appellant's right to recoup, in this case, to the extent warranted by the proofs; yet it is manifest the allowance of merely nominal damages being all that he is entitled to, would make no appreciable difference in the amount of the judgment. A cent the one way or the other would certainly make no practical difference, and the maxim, *de minimis non curat lex,* applies.

The judgment will be affirmed.

*Judgment affirmed.*