CASE 17.—ACTION BY CHARLES ANTHONY AGAINST PERCY
C. HUDSON AND OTHERS FOR VALUE OF DEFICIT
IN LAND SOLD TO HIM.—December 18.

# Anthony v. Hudson, &c.

Appeal from Jefferson Circuit Court; Chancery
Branch (Second Division).

SAMUEL B. KIRBY, Judge.

From a judgment dismissing his petition plaintiff
appeals—Affirmed.

1. Vendor and Purchaser—Deficit in Land Sold—Recovery .Back.
   —Where a vendee, in a sale of land by the acre, receives less
   than the contract and deed call for, he may recover back
   the amount paid for the deficit.
2. Same—Sales in Gross—Deficits—Recovery.—Under the rule
   that, where a sale of land is made in gross, slight variations
   in the quantity of land conveyed, either of overplus or deficits,
   will not be noticed, and relief will not be granted unless the
   difference between the quantity supposed and that actually
   transferred is so gross as to be beyond the range of ordinary
   contingency, a vendee can have no relief for a deficit of 9./1
   acres in a sale of 560 acres.
3. Evidence—Parol Evidence—Varying Terms of Contract.—A
   contract for the sale of land must be gathered from the
   writing. No outside conversation or oral statement, which is
   not directed to the end of impeaching a writing for fraud
   or mistake, which takes place before the writing is drawn,
   can explain, modify, or change it.
4. Vendor and Purchaser—Sale of Land in Gross or by Acre.—
   A contract to sell land in Illinois, and the deed thereafter
   given, both recited that the tract sold contained so many
   acres, "according to United States survey," and the contract
   also recited that the gross amount of the purchase money

was at the rate of $105 per acre. Held, that the sale would be considered to be in gross, and not by the acre.

BENJAMIN F. WASHER and FORCHT & FIELD for appellant.

## CONCLUSION.

1. We earnestly submit that the following facts have been established, and the following propositions of law are to be sanctioned.

2. Anthony and Hudson both considered that the tract contained 560 acres, and the price of $58,800 was fixed on that idea, being at the rate of $105 per acre.

3. The contract and deed prove it. Anthony testifies to it and his testimony is competent. Cantrill, Hudson's agent, gives positive evidence of the fact and is not contradicted.

4. Cantrill, the agent, received a commission of $1.00 an acre from Hudson, and was paid by check $560.

5. The shortage exists for which Anthony has paid Hudson $1,019.55. This in equity and justice he ought to return.

6. The law implies a promise from the defendants to refund the excessive amount thus paid, and the prayer of the petition asking such relief ought to be granted.

GEORGE DU RELLE, BODLEY & BASKIN and HELM BRUCE for appellee.

## CLASSIFICATION OF QUESTIONS DISCUSSED WITH AUTHORITIES.

1. Parol testimony is not competent to explain or modify a written instrument. (Harrison v. Talbot, 2 Dana 258.)

2. If this was a sale by the acre, it was acreage according to United States survey.

3. The sale was a sale in gross and not by the acre. The appellant could not recover for any shortage "beyond the range of ordinary contingency." The court will grant no relief where the shortage was less than 10 per cent. In the case at bar the shortage was only 1.7 per cent. (Young v. Craig, 2 Bibb 270; Harrison v. Talbot, 2 Dana 258; Miller v. Craig, 83 Ky. 626; Russell v. Phillips, 15 Ky. Law Rep. 76.)

4. This being a sale of land located in Illinois, it is construed and controlled by the law of that state. (Page on Contracts, section 1724.)

5. Where land is sold in gross by proper numbers as indicated

Anthony v. Hudson, &c.

by government survey or other specific description, the grantee can not recover for a deficiency unless so great as to raise a presumption of fraud. (Wadhams v. Swan, 109 Ill. 46.)

6. Appellant has resold the land by the same description, and, instead of suffering damages by the alleged shortage, has realized a profit of $8,900.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

In 1902 Homer Hudson entered into a contract for the sale to Charles Anthony of two tracts of land, estimated to contain in the aggregate 560 acres, situated in Illinois, for the sum of $58,800. Afterwards he executed a deed for the land, and the deed was placed in escrow until the purchase money should be paid. When the money was paid the deed was delivered, and the transaction apparently closed. Subsequently the vendee, Anthony, sold the land to different parties, and it was ascertained that there were 9.71 acres short of 560 acres as was supposed. As the sale was at the rate of $105 per acre, this action was instituted to recover of the vendor's estate (he having since died) $1,019.55, it being claimed by the plaintiff that this sum was paid under mistake of fact, he supposing there were 560 acres in the land purchased by him.

The petition of plaintiff is bottomed on the theory that the purchase by him from Hudson was by the acre, and there being 9.17 acres less than was supposed by the parties, to that extent there was a failure of consideration, and he was entitled to recover the overpayment mentioned. The defense was based upon the theory that the transaction between the parties was a sale, not by the acre, but in gross, and that the purchaser agreed to pay, and did pay, $58,800 for a given tract of land. The answer also

pleaded that the sale was an Illinois contract, and governed by the laws of that state, and that by the law of that state the transaction was one in gross, and not by the acre.

The contract and deed, in so far as they are necessary to illustrate the questions we have in hand, are as follows:

## "Contract.

"This agreement entered into this the 29th day of July, 1902, between Homer Hudson, of Covington, Ky., and Charles W. Anthony, of Tuscola, Ill., witnesseth: That the said Homer Hudson has sold to said Charles W. Anthony for $58,800.00, being at the rate of $105.00 per acre, the following described real estate, situated in the state of Illinois, described as follows:

"First: The northwest quarter, and the northwest quarter of the southeast quarter of section thirty-four (34) in township fifteen (15) north of range eight (8), east of third principal meridian, containing according to the United States survey two hundred (200) acres.

"Second.    The northeast quarter, the northeast quarter of the southeast quarter and the southwest quarter of section thirty-four (34) in township fifteen (15) north of range eight (8) east of the third principal meridian, containing according to the United States survey, three hundred and sixty (360) acres reserving from both above described tracts the right of way to the Illinois Central Railroad Company, two hundred (200) feet wide, where the track of said railroad has been laid over said land. * * *"

"Deed.

"Know all men by these presents: That Homer Hudson, widower, of Covington, Kentucky, for and in consideration of fifty-eight thousand eight hundred ($58,800.00) dollars, to him paid by Charles W. Anthony, of Tuscola, Ill., the receipt whereof is hereby acknowledged, do hereby bargain, sell and convey to the said Charles W. Anthony, his heirs and assigns forever, the following described real estate, to-wit:

"Situated and being in the state of Illinois, and being the northwest quarter and the northwest quarter of the southeast quarter of section thirty-four (34) township fifteen (15), north of range eight (8), east of the third principal meridian, containing according to United States survey, two hundred (200) acres, being the property conveyed to the grantor by deed from the Illinois Central Railroad Company, record in book 14, page 196, of the records of the county of Douglas, state of Illinois. Situated in the state of Illinois, and described as follows: The northeast quarter of the southeast quarter and the southwest quarter of section thirty-four (34) in township fifteen (15) north of range eight (8) of the third principal meridian, containing, according to the United States survey, three hundred and sixty (360) acres; reserving, however, from both of said described tracts the right of way to the Illinois Central Railroad Company, two hundred (200) feet wide, where the track of said railroad has been laid over said land. * * *"

The chancellor held that the action was transitory and governed by the law of the forum, and the view we have taken of the remaining question precludes the necessity of examining the soundness of that view, although we do not mean to intimate that we disagree thereto, but merely that it is not necessary to consider it.

We think the contract and deed made in consumma-
tion thereof both show clearly that the contract was
for a sale and conveyance of tracts of land in gross,
and not by the acre. The land is situated in Illinois,
which state is laid off into townships, sections, and
quarter sections by the United States government
survey, and the language used in both of the instru-
ments of conveyance involved herein shows plainly
that the vendor did not intend to sell the property by
the acre; nor is there any statements that the tracts
of land consisting of quarter sections, and parts of
quarter sections, contained any given number of
acres. The language is uniform throughout the writ-
ing, "containing according to United States survey"
so many acres. This expression is used twice in the
contract and twice in the deed, and is invariably the
same. Nowhere is it said, or intimated, that the
vendor had any other knowledge of the number of
acres than what appeared from the United States
survey. And it is not disputed that according to
the government survey there should have been 560
acres in the tract sold, although it clearly appears
that according to a correct survey there were 9.17
acres less than 560 acres. Undoubtedly, if the trans-
action under consideration had been a sale by the acre,
the vendee would be entitled to the relief he seeks;
but a very different rule prevails on this point if the
transaction be one for the sale of a specific tract of
land, or, as it is called, a "sale in gross." In the
latter class of sales the courts conclude that the parties
did not intend to have slight variations, either of
overplus or deficits, corrected, but that the contracts
are made with a view to transfer a specific tract with-
out reference to the particular number of acres; and
relief will not be granted unless the difference be-

tween the quantity believed to exist and that which is actually transferred is so gross as to be beyond the range of ordinary contingency.

This question arose in the case of Young v. Craig, 2 Bibb 270, where, in the opinion of the court, Chief Justice Boyle set forth the distinction we have above stated. In the opinion it is said: "Contracts for the sale of land may be considered of two descriptions: First, where the sale is of a specific quantity, which is usually denominated 'a sale by the acre;' and, second, where the sale is of a specific tract, by name or description, each party risking the quantity. The latter for the sake of brevity, is sometimes called 'a sale in gross.' It is evident that in a sale per acre much less variation from the quantity intended to be conveyed would afford evidence of a mistake which would justify the interposition of a court to correct it than would be sufficient for that purpose in a sale of the other description." The court then proceeds to say that in gross sales of land the idea that the parties did not intend to have every slight discrepancy accounted for is not repelled by the fact that the estimated number of acres is given. The exact language of the court upon this point is: "This idea is not repelled by the expression of the quantity of acres. On the contrary, it rather derives strength from the manner in which the quantity is mentioned; for it plainly indicates that the expression of quantity was used as matter of description only, and that it was the intention of the parties not to be confined to a precise and specific quantity." In the case above cited it was held that the sale was in gross, and that a difference between 481 acres and 425 acres did not warrant the interposition of the chancellor to correct the mistake.

In Harrison v. Talbot, 2 Dana 258, Chief Justice

Robertson, in delivering the opinion of the court said:
"As was truly observed in Young v. Craig, the equity
of each case must depend on its own peculiar circum-
stances. The relative extent of the surplus or deficit
can not, per se, furnish an infallible criterion. The
conduct of the parties, the date of the contract, the
value and extent and locality of the land, the price,
and other nameless circumstances are always impor-
tant and generally decisive. Sales in gross may be
subdivided into various subordinate classifications:
First, sales strictly and essentially by the tract, with-
out reference in the negotiation or in the consideration
to any estimated or designated quantity of acres; sec-
ond, sales of the like kind, in which, though a supposed
quantity by estimation is mentioned or referred to in
the contract, the reference was made only for the pur-
pose of description, and under such circumstances or
in such manner as to show that the parties intended
to risk the contingency of quantity, whatever it might
be, or how-much-soever it might exceed or fall short
of that which was mentioned in the contract; third,
sales in which it is evident from extraneous circum-
stances of locality, value, price, time, and the conduct
and conversations of the parties, that they did not
contemplate or intend to risk more than the usual rates
of excess or deficit in similar cases, or than such as
might be reasonably calculated on as within the range
of ordinary contingency; fourth, sales which, though
technically deemed and denominated 'sales in gross,'
are, in fact, sales by the acre, and so understood by
the parties. Contracts belonging to either of the two
first-mentioned classes, whether executed or executory,
should not be modified by the chancellor when there
has been no fraud. Such was the contract in the case
of Brown v. Parish, lately decided by this court. 2

Dana 6. But in sales of either of the latter kinds an unreasonable surplus or deficit may entitle the injured party to equitable relief, unless he has by his conduct waived or forfeited his equity." In the above case, although the sale was one in gross, a deficiency of 90 acres was held to be a deficit beyond the range of ordinary contingency.

In Russell v. Phillips, 22 S. W. 220, 15 Ky. Law Rep. 76, there was involved the right to a correction for deficiency in a sale of land in gross, and in the opinion the following excerpt from Warvelle on Vendors is quoted with approval: "Mere enumeration of quantity at the end of a particular description of the premises, where there has been no fraud or gross mistake, has ever been regarded as matter of description only, and not of the essence of the contract; and in such cases the purchaser is not entitled to an abatement of price because, on survey, the tract is found to contain a less number of acres than that specified. Warvelle on Vendors, volume 2, page 925."

In Illinois, where the land involved is situated, the rule on the question in hand is thus stated in Wadhams v. Swan, 109 Ill. 46: "The general rule unquestionably is that, where a tract of land is sold for a sum in gross, by its proper numbers as indicated by government survey, or by any other specific description by which its exact boundaries are or may be determined, the boundaries to be thus ascertained, in case of a discrepancy, will control the description as to the quantity or number of acres, and in such case neither the purchaser nor the vendor will have a remedy against the other for any excess or deficiency in the quantity stated, unless such excess or deficiency is so great as to raise a presumption of fraud. It may be stated as a limitation on the above proposition that,

assuming the parties to be acting in good faith, and that there has been no fraudulent misrepresentation of any kind, upon a sale of an entire tract of land by metes and bounds for a gross sum neither party will be bound by a statement as to the quantity or number of acres contained in the tract, except where such statement is expressly, or by necessary implication, made the essence of the contract. Of course, where the seller warrants the tract, either expressly or by necessary implication, to contain a certain number of acres, or, which amounts to the same thing, where the sale is by the acre and the seller makes a misrepresentation as to the number, the latter will, as in any other case of a breach of contract, be liable, and in an action by him for the purchase money, the amount of the deficit at the contract price may be recovered.''

Applying the principle enunciated in the foregoing authority to the facts of this case, there can not be a reasonable doubt that the chancellor decided the question before him correctly. The contract must be gathered from the writing. No outside conversation, or oral statement, which is not directed to the end of impeaching a writing for fraud or mistake, which takes place before the writing is executed, can explain, modify, or change it. When the parties reduce their contract to writing, and there is no fraud or mistake in the words which express it, oral evidence is incompetent to change or modify it. Taking the writing as it stands, we have no doubt that the vendor did not intend to sell the land by the acre, but contemplated selling it by the government survey. The recitation that the gross amount of the purchase money was at the rate of $105 per acre is a mere matter of description, and in nowise militates against the theory that it was the intention to sell in gross. So far as the prac-

tical situation was concerned, it was as if one should contract for a square of ground in a city, bounded by four named streets, with the recitation that the square was shown to contain 10 acres of land by the city maps. In the case supposed no one would think that the parties intended, by the reference to the city maps, to warrant that the square contained 10 acres of land. No more is it to be concluded that where land is sold by reference to United States survey, calling in the description for the township, section, quarter section, and then reciting that the boundary is said to contain so many acres by the United States survey, will it be presumed that it was the intention to warrant that the boundary contains the number of acres shown by the government survey. The reference to the number of acres in the government survey is matter of description, and unless the discrepancy is so gross as to be beyond the range of ordinary contingency, the chancellor will refuse to interpose for the purpose of correction.

The cases cited by the appellant are applicable to a state of case where the sales were by the acre, or the amount of the land was expressly warranted, and they are inapposite to the question before us.

For these reasons the judgment of the chancellor in dismissing the petition is affirmed.