## Ford v. Coles.

May 2, 1939.

**132**

WEBB & WEBB for appellant.

CLYDE BURNETT for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE RATLIFF— Reversing.

On the 13th day of April, 1936, appellant and appellee entered into a contract of sale of certain land in Graves County, Kentucky. That part of the contract pertinent to the issues involved in this appeal reads as follows:

"This agreement made and entered into by and between Daisey Melvin Coles of the first part and A. P. Ford of the second part, both of Mayfield, Graves County, Kentucky.

"Witnesseth: That the said party of the first part hereby agrees to sell to the party of the second part, 52 acres of land lying on the east side of the Mayfield-Paris Highway, for a consideration of $60.00 per acre, and to give him a free and clear title to the land, free of all mortgages."

On the same day the contract was executed appellee executed a deed to the land referred to in the contract, the pertinent parts of which read as follows:

"For the consideration of the sum of $1.00 Dollar paid and to be paid as follows, viz: all cash, in hand paid the receipt of which is hereby acknowledged, I, Daisey Melvin Coles, widow, have sold and hereby convey with covenant of General Warranty to A. P. Ford, the following described real estate lying in District No. 4th Graves County, Kentucky, viz: Being 52 acres of land lying in the southwest and the northwest quarters of Section 12, Township 2,

Range 1, East, and bounded and described as follows: * * *,,

At the time of the transaction the Federal Land Bank of Louisville, Kentucky, held a mortgage against the land conveyed, together with other land owned by appellee, and it was agreed and understood, and so stipulated in the contract between the parties, that the deed and the check for $3,120, the purchase price of the land, be placed in the hands of J. C. Hamlett, as escrow agent, to be held by him until the mortgage indebtedness to the Federal Land Bank was adjusted and the mortgage released as against the land conveyed.

The Federal Land Bank agreed to accept $2,800 in satisfaction of its lien against the land in question, and in lieu of the check for $3,120 previously issued by appellant, he issued his check to the Federal Land Bank for $2,800, and after deducting certain application fees, etc., there was a balance of $296.25 due appellee, for which sum he issued his check to her. After the release had been executed by the Federal Land Bank and the deed delivered to appellant, he discovered that the tract of land represented to contain 52 acres, contained only 48½ acres.

On the discovery of the shortage appellant attempted to stop payment of his check for $296.25 issued to appellee, but for some reason not explained in the record, the check was paid by the bank. Appellant then demanded of appellee a refund of $210 of the purchase price of the land, representing the alleged shortage of 3½ acres at $60 per acre, and upon appellee's refusal to pay the demand appellant brought this suit in the Graves circuit court to recover of the appellant the said sum of $210.

Appellee filed her answer denying the shortage and alleging that the sale was in gross and that the shortage in acreage did not amount to 10% of the total acreage of the land. By amended answer she further plead that before the delivery by her, or anyone, of the deed to the land, that the plaintiff discovered the alleged shortage and mentioned it to her and she thereupon informed appellant that she was only contracting to convey to him the land which belonged to her lying east on the Mayfield-Paris Highway, and no more, and that she further notified appellant at the time that she did not guarantee the land conveyed to him to contain any spe-

cific number of acres. She further asserted that the deed was accepted by appellant with full knowledge that she was not contracting to sell him any guaranteed number of acres, but only that part of the land belonging to her situated on the east side of the Mayfield-Paris Highway. By agreement, the affirmative allegations of the answer were controverted, thus completing the issues.

The evidence was taken by depositions and the case submitted to the court without a jury. The court made separate findings of facts and law and found as a fact that the tract of land in question contained only 48½ acres. The land was surveyed by a number of surveyors and one of them estimated it to contain 48½ acres; another one found it to contain 49 acres; and another found it to contain 52.49 acres. The survey made by the Federal Land Bank for the purpose of its loan to appellee shows that it contained 48.77 acres. In this conflict of evidence, we are unable to say that the chancellor's finding of fact as to acreage is against the preponderance of the evidence.

However, the court further found as a fact as follows:

"Both parties were well acquainted with the land described in the deed, it was well bounded, and the boundaries plainly marked prior to and at the time of the sale. The deed accurately described the land sold;"

and concluded that the sale of the land was in gross and not by the acre and, since the shortage is less than 10% of the 52 acres, appellant was not entitled to recover anything by reason of the alleged shortage.

Apparently, the chancellor based his finding that the sale was in gross, upon the fact that appellant was acquainted with the land and the deed accurately described it.

The fact that appellant was acquainted with the land does not mean necessarily that he knew that it contained 48½ acres instead of 52 acres. The difference between 52 acres and 48½ acres is too small for anyone to detect by sight or observation without a survey or other measurement. This fact is demonstrated by the evidence of the surveyors who testified in this case. Even after surveying the land and calculating it, some

of their estimations varied from 2 to 3 acres. We do not think it reasonable to presume that appellant knew, or could have known, by sight or mere acquaintance with the land, that it did not contain the acreage represented to him by appellee, as stated in both the contract of sale and the deed.

Appellee testified, as pleaded in her amended answer, that just before the delivery of the deed she informed appellant that she was not selling him any particular number of acres, but only that part of the land she owned on the east side of the Mayfield-Paris Highway. Appellant denies having any such conversation with appellee. However, under the authority of Anthony v. Hudson, 131 Ky. 185, 114 S. W. 782, 133 Am. St. Rep. 231, it is doubtful that appellee's evidence on this point is competent. In that case, where a similar question was involved, it was held that the contract must be gathered from the writing and no outside conversation, or oral statement, which is not directed to the end of impeaching a writing for fraud or mistake which took place before the writing is executed, can explain, modify, or change it; and further, when the parties reduce their contract to writing and there is no fraud or mistake in the words that express it, oral evidence is incompetent to change or modify it.

In Pond Creek Coal Co. v. Runyon, Adm'x et al., 199 Ky. 539, 251 S. W. 841, 843, Runyon executed to one Kesterson, trustee, an option to purchase at $20 an acre the coal and mining rights in certain land consisting of two tracts separately acquired. The option was assigned to the Pond Creek Coal Company and before it expired Runyon deeded the coal and mineral rights to the Pond Creek Coal Company. One-half of the consideration was paid in cash and a note executed for the balance of the agreed consideration. It was discovered soon after the execution of the deed that one of the tracts of land contained in the option and deed, thought to contain 119.8 acres, contained only 90.78 acres. Runyon never attempted to collect the note, which was dated February, 1912. He died in 1915. Later, Geneva Runyon was appointed administratrix of Runyon's estate and brought suit to collect the note. The coal company filed answer, set-off and counterclaim, admitting that it had purchased the land and had executed the note, but alleging that it had agreed to pay $20 an acre for the land and that one of the tracts supposed to contain

119.8 acres contained only 90.78 acres, and there was a deficiency of 29.02 acres for which it was entitled to a credit on the purchase price. The plaintiff administratrix denied that the sale was by the acre and alleged that the land was surveyed by the appellant before the execution of the deed and that the coal company knew that the tract of land did not contain as many acres as was stated in the deed. She further alleged that the sale was in gross and that a part of the consideration therefor was the granting of certain rights to use the surface in mining operations. She pleaded other defenses which are not here material and it is unnecessary to discuss them. After discussing certain other issues which are not pertinent to the present case, the court said:

"On the merits of the case, the first question is whether appellant was entitled to set off the deficit in acreage at the rate of $20 an acre against the note sued on. The deed from Albert Runyon to the Pond Creek Coal Company does not indicate that the purchase price was $20 an acre, but it is shown without contradiction that the deed was executed pursuant to an option wherein the price was so stated. This fact seems to us to show conclusively that the sale was not by the tract without reference to the acreage nor in gross, but by the acre. It has uniformly been held by this court that where land is sold by the acre, the vendee is entitled to recoup from the vendor to the extent of any deficiency in the acreage, no matter how small. Harrison v. Talbot, 2 Dana 258; Morris etc. v. McDonald, 196 Ky. [716] 721, 245 S. W. 903."

In the case at bar the contract of sale pursuant to which the deed was made specifically stated that appellee agreed to sell appellant "52 acres of land lying on the east side of the Mayfield-Paris Highway, for a consideration of $60 per acre * * *." The deed does not indicate that the purchase price was $60 per acre and is somewhat indefinite, reciting a consideration of "$1.00, paid and to be paid, as follows, viz: All cash, in hand paid * * *, being 52 acres of land," and after a general reference to the location of the land it was described by metes and bounds.

Appellee attempts to distinguish the case at bar from the Pond Creek Coal Company case, supra, on the ground that in that case there were "no metes and

bounds" contained in the option, but so many acres, while in the present case the deed definitely described the land in metes and bounds. We do not think that a description of the land in metes and bounds has any material bearing on the question as to whether the sale was by the acre or in gross. It is customary, and perhaps necessary, that a deed definitely describe land conveyed, regardless of whether the sale is in gross or by the acre. A general reference to the location of a tract of land and reciting that it contained a certain number of acres might not enable the grantee to know definitely the extent of the land conveyed with reference to adjoining land owners.

The contract specifically stating that the consideration was $60 per acre and the deed being indefinite on that point, the contract is controlling. It will be noticed that 52 acres at $60 per acre produce $3,120, the sum paid for the land, which fact considered in the light of the contract and other circumstances, tends to corroborate appellant's position that the sale was by the acre.

Appellee cites and relies upon the case of Page v. Hogan, 150 Ky. 726, 150 S. W. 801, and Russell v. Phillips, 22 S. W. 220, 15 Ky. Law Rep. 76. An analysis of these cases, however, disclose that they are not analogous to the case at bar, once the contract here involved is taken into consideration with the deed.

Appellee further relies upon the case of Anthony v. Hudson, supra, and insists that it is exactly in point with the case at bar, and sustains her position. In that case the land involved was situated in the State of Illinois and determined by the laws of that state. In reference to the deed and contract involved in that case the court said [131 Ky. 185, 114 S. W. 783]:

"The language is uniform throughout the writing, 'containing according to United States survey' so many acres. This expression is used twice in the contract and twice in the deed, and is invariably the same. Nowhere is it said, or intimated, that the vendor had any other knowledge of the number of acres than what appeared from the United States survey.* * *. In Illinois, where the land involved is situated, the rule on the question in hand is thus stated in Wadhams v. Swan, 109 Ill. 46: 'The general rule unquestionably is that, where a tract of land is sold for a sum in gross, by its proper num-

bers as indicated by government survey, or by any other specific description by which its exact boundaries are or may be determined, the boundaries to be thus ascertained, in case of a discrepancy, will control the description as to the quantity or number of acres * * *.''

In the case at bar appellee contracted to sell to appellant 52 acres of land without reference to any particular survey, or other specific description by which the exact boundaries may be determined. It is stated in the contract that the land lies ''on the east side of the Mayfield-Paris Highway,'' but this is descriptive only of the location of the land rather than acreage.

Once the deed and contract are read and considered together, we find no escape from the conclusion that the sale was by the acre. It follows that appellant is entitled to recover of appellee for the shortage or deficiency in acreage at the contract price.

The motion for appeal is sustained, the appeal granted and the judgment reversed for proceedings consistent with this opinion.