Lillie H. MASON et al.
v.
UNITED STATES.
No. 558–57.

United States Court of Claims.

Jan. 14, 1959.

Ben B. Hardy, Louisville, Ky., for plaintiffs. Thomas E. Gates and Hardy & Hardy, Louisville, Ky., were on the brief.

Walter H. Williams, Washington, D. C., with whom was Asst. Atty. Gen. Perry W. Morton, for defendant. Lawrence W. Sperling, Alexandria, Va., was on the brief.

JONES, Chief Judge.

Petitioners in this case ask recovery from defendant for denial of their alleged prior rights to repurchase surplus Government property.

Plaintiffs formerly owned tracts of land situated in Hardin and Meade Counties, Kentucky. Through direct purchase and condemnation, the Government acquired the land from plaintiffs or their predecessors in 1941 and 1942 for use as part of the Fort Knox military reservation. In 1957 the property was declared surplus by the Government, and plans for its sale at a public auction to be held on December 10, 1957, were announced. Upon learning of the proposed sale, the plaintiffs objected. It was their position that, as former owners, they were legally entitled to a prior right to repurchase the property by negotiated sale. The Government rejected this claim.

The day before the auction, i. e., December 9, 1957, plaintiffs filed an action in this court requesting us, among other things, to declare any sale of these properties by the Government null and void, and to direct the Government to sell the property to them for a sum found to have been paid by defendant when the land was acquired from plaintiffs in 1941 and 1942. These two requested forms of relief were later stricken by the court following an appropriate motion by defendant, to which the plaintiffs consented. As the matter now presents itself, plaintiffs seek a monetary recovery from defendant based upon the difference between the consideration paid by the Government in obtaining the land from plaintiffs and its present fair market value. Defendant has moved for judgment on the pleadings or for summary judgment.

In support of their claim, plaintiffs rely upon (1) the Surplus Property Act of 1944, 58 Stat. 765,* which gave to former property owners the right to repurchase land acquired from them when it was declared surplus by the Government, at a price equal to the consideration paid by the Government in acquiring the property,[1] (2) the Fifth Amend-

---

* Now 40 U.S.C.A. § 471 et seq.

1. Section 23(d) of the Surplus Property Act of 1944, 58 Stat. 765, 777, provided:
   "(1) (A) In the case of any surplus real property which was acquired by any Government agency after December 31, 1939, the person from whom such property was acquired shall be given notice,

ment to the United States Constitution, which provides for just compensation where private property is taken for a public use, and (3) representations allegedly made by Government officials that plaintiffs would initially be given the right to repurchase the property at the price paid by the Government in acquiring it.

■ Section 23(d) of the Surplus Property Act of 1944, supra, which petitioners refer to in support of their claim is no longer of any assistance to them. The "priority" rights which that section conferred were repealed some eight years before petitioners' former property was declared surplus by the Government. Specifically the Federal Property and Administrative Services Act of 1949, 63 Stat. 377, 399, under section 502(a) (1) provides:

"There are hereby repealed—
(1) the Surplus Property Act of 1944, as amended (except sections 13(d), 13(g), 13(h), 28, and 32(b) (2)), and sections 501 and 502, of the Reorganization Plan Numbered 1 of 1947: *Provided*, That, with respect to the disposal under this Act of any surplus real estate, all priorities and preferences provided for in said Act, as amended, shall continue in effect until 12 o'clock noon (east-

in such manner * * * as the Board by regulation may prescribe, that the property is to be disposed of by the United States and shall be entitled to purchase such property, in substantially the identical tract as when acquired from such person, at private sale at any time during the period of ninety days following such notice * * *
"(3) the price to be paid for surplus real property sold under this subsection shall be a price not greater than that for which it was acquired by the United States, such acquisition price being properly adjusted to reflect any increase or decrease in the value of such property resulting from action by the United States, or a price equal to the market price at the time of sale of such property, whichever price is the lower."

2. Title 1, Section 109 of the United States Code provides:

ern standard time), December 31, 1949; * * *"

Clearly petitioners here, who were not in a position to exercise their asserted preference rights until 1957, can offer us no greater "right" under the Surplus Property Act than the plaintiff in High-smith v. Southwestern Medical Foundation, D.C.1953, 116 F.Supp. 958, who unsuccessfully sought to exercise his claimed preference in 1953. The court in that case quickly rejected any suggestion that preference rights under the Surplus Property Act might have survived the enactment of section 502 of the Federal Property and Administrative Services Act of 1949. As the court stated at page 959: "The plaintiff has no right whatever in the land, nor to re-purchase it. * * * The statute which gave the right of re-purchase was repealed, such repeal to become effective at a certain date, and no re-purchase was attempted during that period."

■ Nor can we agree with the argument that the effect of 1 U.S.C. § 109 is to vest repurchase rights in those situated as plaintiffs are. Briefly, that section provides that the repeal of a statute does not extinguish any penalty, forfeiture or liability incurred under that statute unless the repealing act expressly so provides.[2] Even if we concede that 1

"§ 109. Repeal of statutes as affecting existing liabilities.
"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. The expiration of a temporary statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the temporary statute shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. July 30, 1947, c. 388, § 1, 61 Stat. 633."

U.S.C. § 109 could be applied to impose a liability upon the Government in a dispute of this type, it would not be brought into operation here for the reason that the repealing act, section 502(a) (1) of the Federal Property and Administrative Services Act of 1949 *expressly* provides for the extinguishment of the preferences claimed by petitioners.

■ The preference in favor of the former property owners established by the Surplus Property Act of 1944 was in the nature of a gratuity. It has been consistently held that Congress may redistribute or withdraw gratuities without obligating the Government to pay just compensation. Seiden v. Larson, 1951, 88 U.S.App.D.C. 258, 188 F.2d 661, certiorari denied 341 U.S. 950, 71 S.Ct. 1017, 95 L.Ed. 1373; Cummings v. Deutsche Bank und Disconto-Gesellschaft, 1937, 300 U.S. 115, 57 S.Ct. 359, 81 L.Ed. 545; Lynch v. United States, 1934, 292 U.S. 571, 54 S.Ct. 840, 78 L.Ed. 1434.

■ As mentioned above, part of petitioners' case rests upon their allegations that they were advised by Government officials, at the time the property was acquired, that they would be permitted to repurchase the property when it was declared surplus by the Government, and for a price equaling the amount paid by the Government in obtaining the property. Evidence as to these alleged representations would be inadmissible, however, for the following reasons. When the Government acquired the property in 1941 and 1942, three of the tracts were obtained by condemnation and two by direct purchase. The Government attached to its motion now before us copies of the declarations of taking filed by the Government in its condemnation proceedings and of the court-approved deeds, issued pursuant to those proceedings, which reflect the final terms of the transfer of the property to the Government. In none of those documents is there mention of a right by the condemnee to repurchase the tracts from the Government under any circumstance. The interest described as taken in each instance was a fee simple title, subject to certain ease-ments not relevant to this claim. We are unable to discover any ambiguity in these documents concerning the estate passing to the Government. Plaintiffs cannot be allowed a showing that defendant intended to acquire something less than what the judicial records establish. It is well settled that parol or extrinsic evidence is inadmissible, in a collateral proceeding to vary or contradict judicial records, orders or decrees. Hill v. United States ex rel. Wampler, 1936, 298 U.S. 460, 56 S.Ct. 760, 80 L.Ed. 1283; In Re Union League Club of Chicago, 7 Cir., 1953, 203 F.2d 381; In re Crosby Stores, 2 Cir., 1933, 65 F.2d 360.

■ Plaintiffs are similarly in no position to now challenge the interests passing to the Government through direct purchases. The contracts of sale and the subsequent deeds relating to that property, copies of which are attached to defendant's motion, are clear on their face. They make reference to fee simple titles. The parol evidence rule prevents plaintiffs from attempting to prove that lesser estates were intended to be conveyed. They argue, however, that their case comes within the terms of section 371.030 of the Kentucky Revised Statutes which provides:

"The consideration of any writing, with or without seal, may be impeached or denied by pleading."

This provision, most frequently applied in cases where property is transferred for a nominal consideration, was not intended, however, to repeal the parol evidence rule. C. C. Leonard Lumber Co. v. Reed, 1951, 314 Ky. 703, 236 S.W.2d 961. Regardless of whether the provision would be applicable to contracts with or conveyances to the United States, Federal and Kentucky law agree that the estate or interest passing to a grantee, where the instruments of transfer are free of uncertainty, cannot be contradicted by extrinsic evidence. Kynerd v. Hulen, 5 Cir., 1925, 5 F.2d 160; Hart v. Knox County, D.C.1948, 79 F.Supp. 654, appeal dismissed 6 Cir., 171 F.2d 45; Dark Tobacco Growers' Co-op Ass'n v. Ray,

1926, 215 Ky. 373, 285 S.W. 198; Ford v. Coles, 1939, 278 Ky. 131, 128 S.W.2d 609.

For the above reasons, defendant's motion for summary judgment is granted and plaintiffs' petition will be dismissed.

It is so ordered.

REED, Justice (Retired), sitting by designation, and LARAMORE, MADDEN and WHITAKER, Judges, concur.