### A. H. Cochran, Appellant, v. C. C. Bowersox, Appellee.

1. BILLS AND NOTES, § 327*—*when defense of accommodation maker sufficient.* In an action on a promissory note where the defense was that the defendant had signed the note merely for the accommodation of a bank, which was the payee in the note, to enable it to cover up an indebtedness of another party, the real principal, so that the bank could pass an inspection by the bank examiner, that the bank promised not to negotiate the note, but in violation of its promise transferred it to plaintiff after maturity, and that the plaintiff took the note with full knowledge of all the facts, *held* that such matters constituted a complete defense to the action and a verdict for defendant was sustained.

2. BILLS AND NOTES, § 106*—*when not negotiable.* A note drawn payable to a bank without specifying it is payable to the order of the bank or to the bank or its order, *held* not negotiable.

3. BILLS AND NOTES, § 230*—*rights of assignee of non-negotiable note.* Assignee of a non-negotiable note takes it subject to all defenses that might be interposed by the maker against the payee.

Appeal from the Circuit Court of Jersey county; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the October term, 1913. Affirmed. Opinion filed May 5, 1914. Rehearing denied June 25, 1914.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

HAMILTON & HAMILTON, for appellant.

FERNS & SUMNER, and ABBOTT & EDWARDS, for appellee.

MR. JUSTICE ELDREDGE delivered the opinion of the court.

This is an action in assumpsit brought by appellant, A. H. Cochran, against C. C. Bowersox, appellee, E. M. Davis and Annie B. Cross, to recover on a promissory note, dated April 15, 1911, payable to the National Bank of Jerseyville, Illinois, bearing six per cent. interest, for the principal sum of $5,250, due sixty days after date and executed by appellee, Bowersox. Said note is a collateral form note and recites that fourteen bonds of $500 each of the A., J. & P. Ry. Co. were pledged as collateral security and contains power of sale of said bonds in case of default in the payment of said note. It is indorsed by Annie B. Cross, by E. M. Davis, her attorney in fact, and E. M. Davis, and is also indorsed by the bank to the order of A. H. Cochran, appellant. A credit of $700 from the sale of the collateral security January 15, 1912, also appears on the back of said note. The declaration consists of a special count declaring on said note and the common counts. The defendant, Annie B. Cross, defaulted. E. M. Davis had not been served when the case was tried. Appellee, Bowersox, appeared and filed a plea of general issue and several special pleas, which were subsequently amended, and the case was finally tried on the plea of general issue, the second amended plea, the fourth plea and the fifth amended plea. The second plea as amended, in substance, alleges that prior to the execution of the note defendant, E. M. Davis, was indebted to the bank in the sum of $15,000; that said bank feared said indebtedness would not pass the inspection of the National Bank Examiner; that appellee at the instance and request of said bank then and there became maker on some of the notes representing said

indebtedness of Davis as an accommodation maker for the accommodation of said bank; that said bank agreed it would not negotiate said notes; that as said notes became due, renewal notes were executed as accommodation notes under said agreement until the last renewal note, which is the note sued on; that said bank accepted said note from defendant as such accommodation maker and not otherwise; that said defendant was not indebted to said bank, or to E. M. Davis, when said notes were executed, and received no valuable consideration therefor, of which appellant had full knowledge, and that the pretended assignment of said note was made after maturity. The fourth plea avers that said note was signed by appellee as accommodation maker for and at the instance and request of said bank and E. M. Davis, the real principal; that appellee received no consideration for so signing said note; that said bank promised that said note would not be negotiated, assigned or transferred by it; that said bank in procuring said Bowersox to sign said note as accommodation maker acted through its officers and agents, one of whom was plaintiff, Cochran, who assisted and advised in that behalf, and had full knowledge that said Bowersox signed said note as an accommodation maker, and without consideration, and on said promises not to negotiate, etc.; that after the maturity of said note the same was negotiated to Cochran and received by him with full knowledge of the foregoing facts. The fifth amended plea avers that said note was signed by Bowersox as accommodation maker for and at the instance and request of said bank and E. M. Davis, the real principal; that Bowersox received no consideration; that said bank in procuring Bowersox to sign said note acted through its officers, one of whom was Cochran, plaintiff, who assisted and advised in that behalf and had full knowledge of said facts, and that said note was negotiated to Cochran after maturity and received by him with full knowledge of said facts, and that Cochran did not pay any valuable consideration for said

note. An affidavit of amount due was filed with the declaration, and an affidavit of merits to the whole cause of action was filed with the pleas and the pleas were sworn to. Replications were filed to these pleas denying each allegation thereof. On the trial of the case a verdict was rendered in favor of appellee.

The history of this controversy began in February, 1907. At that time defendant, E. M. Davis, had organized the St. Louis Fire Insurance Company and the evidence tends to show that he desired to procure some money for the benefit of said insurance company. He was a son-in-law of Andrew M. Cross, who was president and majority stock owner of the National Bank of Jerseyville. The total amount said bank could loan to any one person under the banking laws at that time was $6,600. Davis was already indebted to the bank on various notes aggregating $5,500. The evidence for appellee tends to show that Mr. Cross, president of the bank, and Davis procured one C. C. Conner to sign a note for the principal sum of $6,600, payable to the bank. Thirty-five shares of stock of the insurance company were placed in the name of Conner and assigned as collateral security for the note. Thereupon the sum of $6,600 was deposited to the credit of the insurance company in the National Bank of Jerseyville. All the entries in the bank books concerning the transaction are in the handwriting of Mr. Cross, its then president. Conner owed the bank nothing at the time, and owed Davis nothing, and did not own any stock in the insurance company. There is no claim that any consideration ever passed to Conner for the execution of said note. Conner testified that, while he had forgotten the details of the transaction, yet it was executed at the request of Cross and Davis substantially for the reasons above stated. The note ran in the name of Conner for about a year and then was renewed in the name of Arthur J. Davis, a brother of defendant, E. M. Davis, and the collateral stock was shifted to the name of

Arthur J. Davis. In December, 1908, defendant, E. M. Davis, paid $1,350 on the note, thereby reducing it to $5,250. At this time the note of A. J. Davis was taken up and cancelled, and it was substituted by two renewal notes, one for $2,700 and the other for $2,550, both notes being executed by C. C. Bowersox, appellee, and one B. B. Sawyer, and the thirty-five shares of insurance stock deposited as collateral were again shifted, eighteen shares thereof being placed in the name of Bowersox, and assigned as collateral for the $2,700 note, and seventeen shares being placed in the name of Sawyer, and assigned as collateral for the $2,550 note. At this time neither Sawyer nor Bowersox was indebted to defendant Davis, nor to the bank. The latter had never been in Jerseyville, did not know any of the officers of the bank, and the evidence tends to show that prior to the taking of said last two mentioned notes Davis had a conversation with Heller, assistant cashier of the bank, about arranging to have some person sign the two notes so Davis' name would not appear on the notes, and defendant Davis testifies that the agreement between him and the bank, through Heller, was that the obligation should remain the obligation of Davis, and that the accommodation party should not be held liable and the notes would not be negotiated, and this arrangement was communicated to Bowersox. On February 1, 1909, Mr. Cross died. D. J. Murphy then became president of the bank and appellant, Cochran, who had been cashier up to this time, was made vice-president. After Mr. Cross' death, appellant Cochran, Heller and Murphy looked after this loan, and all of the transactions thereafter were consummated through one or the other of these officers of the bank. These two notes were renewed every ninety days by Sawyer and Bowersox signing new notes. All the renewal notes were sent to Davis and he paid the interest thereon, the cancelled notes were returned to him, the renewal notes to be signed were mailed to him,

and the correspondence introduced in evidence clearly shows that the bank and its officers knew that the debt was that of Davis. The renewal of these two notes was kept up until October, 1910, when D. J. Murphy, president of the bank, wrote to defendant, Davis, the following letter:

Exhibit 25.

"Granite City, Ill., October 14th, 1910.
"Mr. E. M. Davis,

"St. Louis, Mo.

"Dear Sir:

"I have been trying to see you for some time, but so far have failed to do so, and several times I have called on the 'phone only to find you out. The matter about which I wish to see you is the loan *you* have at Jerseyville. The Sawyer and Bowersox notes are past due, and something must be done. At the last meeting of the Board of Directors it was decided that if these loans are to continue, either under the *same name or under others,* collateral form notes must be signed, and if St. Louis Fire Insurance stock is to be the collateral, the collateral must have a par value twice the amount of the loan. I do not see why two notes should be made under the conditions. It seems to me the Bowersox and Sawyer notes might just as well be combined, thus making one loan of $5,250, with collateral in the double amount. The examiner questioned us pretty closely the last time he was there, on those loans, and we are anxious to get the matter into such shape as will leave us open to the least criticism. Will you not attend to the matter at once if you have not already done so?

"Yours very truly,

"D. J. Murphy."

From this letter it is clearly shown that this loan was, as a matter of fact, the debt of defendant Davis and was simply carried on in the name of these various makers of the different notes and that it was immaterial to the bank who signed the notes or note. Pursuant to

this letter one note for the principal sum of $5,250 was drawn up in lieu of the two former notes and appellee, Bowersox, was requested to sign it, which he did. The collateral stock which had been in the name of Sawyer was then shifted to the name of Bowersox, and all of said stock held as collateral for the new note, which was thereafter renewed by making new notes signed by Bowersox until the note sued on in this case was executed. After the note had been renewed in February, 1911, the bank at the request of defendant Davis turned over to him, Davis, the Fire Insurance Company stock which had been held as collateral and defendant Davis substituted therefor bonds of the A., J. & P. Ry. Co. of the face value of $7,000. Bowersox knew nothing of such substitution, and afterwards these bonds were sold for $700 and the note sued on in this case was credited with that amount. After the substitution of the railway bonds as collateral, at the request of the bank through Heller, cashier, defendant Davis indorsed said note on the back, also indorsed the name of Annie B. Cross by him as her attorney in fact. This note was again renewed April 15, 1911, signed by Bowersox and indorsed on the back by the same parties. The name of Davis did not appear on any of these notes in any of these transactions until the renewal note was made in February, 1911. The note after its maturity was assigned by the bank to A. H. Cochran, who was then vice-president of said bank. Cochran himself wrote many letters to Davis in regard to the different renewals of these different notes, sending the renewal notes to him and took part in many of the transactions concerning them. Heller, the cashier, also wrote a number of letters in regard to the notes. Appellant, Cochran, in a letter to Davis of March 30, 1909, says, among other things: "We also have your favor of the same date regarding notes of Bowersox and Sawyer. These notes for $2,700 and $2,550. We notice that you have figured the interest on the $2,550 note at three per cent. This, we be-

lieve, represents the amount of the balance of the St. Louis Fire Insurance Company. We did not know just what your arrangement with Mr. Cross was regarding interest on this account, but if that was the arrangement between you and Mr. Cross, of course it is all right.'' On December 28, 1909, Cochran wrote to Davis a letter stating, among other things: ''Also find enclosed notes $2,550 and $2,700, Bowersox and Sawyer, in renewal for those expiring 30th inst., on which you had paid the interest to 30th inst. Please have parties sign as indicated by pencil memorandum.'' On October 24, 1910, Heller, the cashier, in acknowledging the execution of the $5,250 note of Bowersox in consolidation of the two notes signed by Sawyer and Bowersox, which was suggested by President Murphy's letter heretofore mentioned, wrote to Davis as follows: 'In lieu of the Bowersox note for $5,250, sent us in your letter yesterday, enclosed herewith find note of B. B. Sawyer and C. C. Bowersox, cancelled. The interest due on the said notes amounts to $14.88. Mr. Murphy called us up the other day and said that we could expect the examiner any day, so I was somewhat anxious to get the matter in proper shape.'' The fact is established beyond any question that the indebtedness evidenced by the note sued on was that of defendant Davis and not of Bowersox. All the testimony in the case conclusively shows that all the officers of the bank, including Cochran, appellant, knew the real status of this indebtedness. The insurance company failed, as did also the railway company, and defendant Davis went to Colorado to reside. The evidence does not show that appellee, Bowersox, was a man of any financial means, and it is highly improbable that appellant, Cochran, gave any valuable consideration for the assignment of this note to him by the bank. Cochran, Murphy, Heller and Cross were all members of the board of directors of the bank and constituted a majority thereof and were conversant with all of these transactions dur-

ing all these years, and their knowledge under such circumstances must be held to be knowledge of the bank, and whatever agreement was made between them and Davis, whether the particular officer who made the agreement had authority or not, has been ratified by the bank. Heller, Murphy and Cochran all testify that they had no knowledge that this note was accommodation paper and insist that the weight of the evidence shows that it was not. Assuming this to be true and that the note was given in the usual course of business, the assignment to appellant was made after maturity with full knowledge that there was no consideration for it. Moreover, the note itself does not contain any words of negotiability, as it is payable to the bank, and not to the order of the bank, nor to the bank or its order. Under section 8 of the Negotiable Instrument Act of 1907 (J. & A. ¶ 7647), it has been held that a note so drawn is not negotiable. *Peterson v. Emery,* 154 Ill. App. 294. This is strong corroborative evidence that the agreement was that the note was not to be negotiated. If this note was not accommodation paper, appellant took it subject to all the defenses that might be interposed by Bowersox in an action on the note if brought by the bank.

If it was accommodation paper and the bank was the accommodated party, the rule is universal that the accommodated party can never recover against the accommodating party, and the note being non-negotiable and merely being executed for the purposes of accommodating the bank in covering up the indebtedness of Davis, for the purpose of passing a bank examination, and Cochran having taken this note after maturity with full knowledge of these conditions, and also of the restriction that the note should not be negotiated, and the jury having found for appellee on these issues, we think that a complete defense to the note has been made. *Keenan v. Blue,* 240 Ill. 177.

Criticism has been made in regard to some of the

166     Appellate Courts of Illinois.

Van Wormer v. Metropolitan Life Ins. Co., 188 Ill. App. 166.

instructions and to the admission of some of the evidence, but feeling convinced that the verdict is right on the merits, we do not think there was any harmful error n regard thereto, and the judgment of the Circuit Court will be affirmed.

*Affirmed.*