## Farmers State Bank & Trust Company of Decatur, Appellee, v. Charlotte A. Parr, Appellant.

## Gen. No. 7,693.

1. WITNESSES—*privileged communications between husband and wife.* In an action by plaintiff bank upon a promissory note signed by appellant and claimed by appellant to have been given by her under an understanding that it was to meet objections by the bank examiner that too large a sum in loans to appellant's husband was carried by the bank and that appellant would never be called upon by the bank to pay said note, the court properly refused to permit appellant's husband to testify as to any statements made by him to the appellant or by appellant to him in reference to the note, as being in violation of the statute relative to the admission in evidence of communications between husband and wife.

2. NEGOTIABLE INSTRUMENTS—*pleading total failure and proof of partial failure of consideration.* Partial failure or want of consideration for a negotiable instrument will not support pleas based upon a total want or failure of consideration.

3. NEGOTIABLE INSTRUMENTS—*parol evidence that note was not to be paid.* When there is a consideration given for a promissory note the payment of the note, or at least the consideration accruing to the maker is, in law, the special purpose for which the note is given and oral testimony tending to show an agreement that the payee would not look to the maker for payment is, in effect, an attempt to contradict the terms of a written instrument by oral proof.

4. NEGOTIABLE INSTRUMENTS—*consideration to wife for her note.* In an action on a promissory note signed by appellant where it appeared that the note was given by appellant, a married woman, to appellee bank in return for the surrender of other notes given by her husband and by her husband and his brother for a valid consideration and also to cover a bona fide debt of appellant to the bank, there was a full consideration for the note in question and no issue in fact was presented for the jury by appellant's pleas of want of consideration.

Appeal by defendant from the Circuit Court of Macon county; the Hon. JAMES S. BALDWIN, Judge, presiding. Heard in this court at the October term, 1923. Affirmed. Opinion filed March 8, 1924. *Certiorari* denied by Supreme Court (making opinion final).

CHARLES C. LEFORGEE, GEORGE W. BLACK, THOMAS

W. SAMUELS, CHARLES Y. MILLER and LEFORGEE, BLACK & SAMUELS, for appellant.

VAIL, POGUE & ALLEN, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

On May 10, 1922, judgment was taken by appellee against the appellant in the Macon county circuit court, by confession, for the sum of $19,875.90, upon a judgment note in ordinary form for the principal sum of $17,917.00, dated October 18, 1920, signed by the appellant and payable to the order of appellee bank six months after date, with interest from date at the rate of seven per cent per annum. On motion of the appellant, the judgment was thereafter set aside and appellant was given leave to plead. The declaration consisted of the usual *narr* and *cognovit*, based on a judgment note.

The appellant filed a plea of nonassumpsit and five special pleas. The second and third pleas pleaded no consideration for the note, and the fourth, fifth and sixth pleas were in substantially the following form:

The fourth plea set out the indebtedness of Frank J. Parr to appellee bank, in a very large amount, and alleged the criticism of the bank examiner to the extension of so large a credit and the giving of the note in question, by appellant, as an accommodation maker and of the contract and agreement made by John R. Pogue, president of appellee bank, with the said Frank J. Parr, for the maker, that said maker would never be called upon by the bank to pay said note, and that there was no consideration for the note.

The fifth plea sets out substantially the same matters that are contained in the fourth plea, and further alleges that appellant purchased stock in the Wenatchee Orchard Land Company from said bank, under the representations of said John R. Pogue and his

warranty that said stock was an especially good and safe investment, and that the corporation was legally transacting business in the State of Illinois; that, on the contrary, said corporation was not legally transacting business in Illinois and that said stock was worthless; that appellant gave her note for $1,200 to the said bank for said stock; that appellant executed a further note for $4,140, as an accommodation note to said bank, to allay criticism of the bank examiner for the excessive credit extended to the said Frank J. Parr and avers that a contract and agreement was made with the president of said bank, John R. Pogue; that appellant would never be called upon to pay the said note for $4,140, and that the said notes were without any consideration whatever.

The sixth plea sets out substantially the matters pleaded in the fourth and fifth pleas and the giving of the notes for $1,200 and $4,140, as set out in said pleas, and that appellant gave a further note for the sum of $5,340 to take the place of the said two notes, with the agreement, as set out, that appellant should never be called upon to pay said note and the plea avers the giving of the note in question for the sum of $17,917 with a like contract and agreement with the said John R. Pogue, president of said bank, that the appellant should never be called upon to pay said note, and the plea avers the total lack of consideration for the said note.

An issue was made upon these pleas and the cause was submitted to a jury and at the close of all the evidence the court instructed the jury to find a verdict for appellee, and there was a verdict finding for appellee bank in the amount set out and a motion by appellant for a new trial having been overruled, a judgment was entered for appellee and the case is brought to this court by appeal.

For an understanding of the issues in this case, it should be stated that the witness Frank J. Parr is the

husband of the appellant, and practically all of the transactions between appellee bank and the appellant were carried out and transacted through said Frank J. Parr, the appellant contending that her husband, in so acting, was the agent of the appellee bank and the bank contending that Parr, being a director of and largely indebted to appellee bank, was acting in his own behalf or as agent of appellant. The transactions on the part of the bank, appellee, had been carried on substantially by John R. Pogue, its president, and while it appears that both Pogue and Frank J. Parr were interested in the bank as directors, Parr and Pogue had also been interested in outside corporations,—the Wenatchee Orchard Land Company, a Washington corporation, and the White County Mining Company,—and that Frank J. Parr had become indebted to appellee bank in a large amount, at the time the note in question was given.

On the 18th day of October, 1920, when the note in question was executed by appellant, appellee bank held the note of appellant, signed by her, in the sum of $5,340, which was the sum of two notes, executed by appellant theretofore, one for the sum of $1,200 and one for the sum of $4,140, and which had been held by appellee bank and upon a renewal, had been merged in the one note for $5,340.

It was shown by the testimony that at the time the note in question was executed by appellant and delivered by Frank J. Parr to appellee bank, that said Frank J. Parr was indebted to the bank in the sum of $20,577 upon various negotiable instruments or promissory notes, about which indebtedness there was no dispute.

As to the note in question Pogue testified that he stated to Parr that he was owing too much money at the bank; that the credit had been extended upon Parr's representations that he, Parr, owned a section of land near Storm Lake, in the State of Iowa, and that

the bank had discovered that the title to this land was in Mrs. Parr and that he must secure the notes and that Parr suggested that he could get his wife, Mrs. Parr, the appellant, to sign the notes, and Pogue testifies that he informed Parr that the bank could carry him, Parr, on $8,000 of the indebtedness, if he could get appellant to take over and assume the balance of the debt. This arrangement, according to Pogue's testimony, was carried out, and appellant's indebtedness was added to that of her husband's and Parr's note was taken for the $8,000, and appellant's note, the one in suit, for $17,917, for the remainder of the indebtedness of both. Pogue testifies that the note in question was made out at the bank and that Parr took the instrument and later returned it to the bank with appellant's signature attached, and delivered the note to the bank, and Pogue denies the testimony of Parr as to any other conversation or arrangement in regard to the note. Parr testified to conversations with Pogue in regard to the indebtedness that tend to support the pleas. Parr had ceased to be a director of appellee bank in January, 1920. Parr testified that Pogue prepared the note and asked him to take the note to his wife and ask her to sign it and stated that he should say to his wife that it was made to relieve the bank situation and that she would never be called upon to pay it. Parr states that he took the note to his wife and that she, appellant, signed the note and he returned it to the bank. The witness Parr testified to other matters in connection with the transaction, but over appellee's objection, Parr was not permitted to testify to any statements made by him to his wife, nor any communications in reference to said note, made by appellant to him, Parr, and the appellant, while on the stand, was not permitted to testify to any communications between herself and husband in regard to said transaction, on the ground that it was conversations be-

tween husband and wife, during the married state, and in violation of the proviso to section Five of the Act [Cahill's Ill. St. ch. 51, ¶ 5] concerning evidence and depositions. In this ruling there was no error. *Goelz, Jr. v. Goelz,* 157 Ill. 33; *Marks v. Madsen,* 261 Ill. 51; *Donnan v. Donnan,* 236 Ill. 341; *Mahlstedt v. Ideal Lighting Co.,* 271 Ill. 154.

In *Marks v. Madsen,* 261 Ill. 53, it was held:

"The husband of plaintiff was called as a witness and was allowed to testify, over the objection of the defendant. Under section 5 of chapter 51 of the Revised Statutes the husband was competent, because the litigation was concerning the separate property of his wife, and the general objection was properly overruled. Under the proviso of the section he was not competent to testify to conversations of his wife. (*Donnan v. Donnan,* 236 Ill. 341; *Baker v. Baker,* 239 id. 82.)"

The whole subject is discussed and the history of the rule given in *Goelz, Jr. v. Goelz, supra,* at page 165, and the rule is absolute that neither husband or wife can testify to any communications or conversation between them during coverture. The rulings of the court were without error in this respect.

Parr testifies that when he handed the note in question to Pogue, he thinks Pogue gave him back a couple of canceled notes. His memory is not clear upon the subject, but he states that he "expects" Mr. Pogue returned to him, at that time, also a note signed by his wife for $5,340.

The note for $4,140, given by appellant to the bank, was one finally given by her to take the place of a note held by the bank and signed by Frank J. Parr and his brother, and Frank J. Parr testifies that when appellant's note, for the same amount, was given to the bank, it was with the understanding that he, Frank J. Parr, had with Pogue that the bank would never ask appellant to pay the note, and that it was given for a special purpose, to aid the bank and so that

the bank would not be criticised by the bank examiner. This note had been renewed at different times. The note for $1,200 given by appellant to the bank, was on a different footing and appellant testified that the consideration for this note was 28 shares of stock in the Wenatchee Orchard Land Company, which she had purchased from John R. Pogue, president of the bank, and in one statement the witness claims that this stock was purchased from the bank and that she paid $2,100 for the shares, of which consideration she paid $900 in cash and borrowed $1,200 from the bank and gave the bank her note to pay the balance, in the sum of $1,200. This note had also been renewed at different times and finally it was merged with the note for $4,140, and the note for $5,340, executed by appellant and delivered to the bank, and this note in October, 1920, formed part of the consideration for which appellant gave the note for $17,917.

From all of the testimony it is practically undisputed that appellant purchased the stock in the Wenatchee Orchard Land Company, from that company, while John R. Pogue was acting as the president of the corporation and Frank J. Parr was its secretary and treasurer, and that appellee bank furnished the consideration to the extent of $1,200 with which appellant made the purchase. The amount was passed in appellee bank to the credit of the Wenatchee Orchard Land Company and later this account had been closed out. We have examined the record fully and this purchase of stock by appellant appears to be a bona fide deal, made separate and apart from the bank, and we can see no reason pointed out in any of the testimony why appellant was not indebted to the appellee in the sum of $1,200, forming, to that extent at least, a portion of the consideration of the note in question. It is true that Frank J. Parr testifies that the agreement with Pogue was that appellant should never be called upon to pay any portion of the note in question.

We shall discuss that phase of the question in connection with the proof showing a partial consideration of the note. There was further proof that at one time Frank J. Parr left $120,000 par value of stock in the White County Mining Company, with John R. Pogue, and that, by some sale or disposition of that stock, the $8,000 note of Frank J. Parr to appellee bank had been paid, but there was no proof of any kind that this stock was collateral for the payment of appellant's indebtedness, or that the stock had any value or what became of the stock, further than that the $8,000 note was paid out of this stock or its proceeds, the particulars of which were not shown.

Appellant contends that there was some evidence submitted tending to show that the note in question was in the hands of appellee bank conditionally or for a special purpose and that the cause should have been submitted to the jury. Section 16 of the Negotiable Instruments Act of 1907 [Cahill's Ill. St. ch. 98, ¶ 36] provides as follows:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him, is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

The first sentence of section 58 of said Act [Cahill's Ill. St. ch. 98, ¶ 78] is as follows:

"In the hands of any holder other than a holder in due course, a negotiable instrument is subject to the same defenses as if it were non-negotiable."

This statute has been construed in *Straus v. The Citizens State Bank of Elmhurst,* 164 Ill. App. 420; *Straus v. The Citizens' State Bank of Elmhurst,* 254 Ill. 185; *Garfield Nat. Bank v. Colwell,* 57 Hun 169, 10 N. Y. Supp. 864; *Higgins v. Ridgway,* 90 Hun 398, 35 N. Y. Supp. 944.

In the *Straus* case there was no consideration for the note and it was shown that the note was left with the bank, upon the agreement that the maker should never be called upon to pay the note, and it was held that the bank could not recover. In this case the Supreme Court, in its opinion, page 186, said:

"If the note relied on as a set-off was made, executed and delivered to the bank without any consideration and upon the agreement that appellee should never be required to pay said note, it is difficult to see how a recovery could be sustained by the bank. If there was no consideration for the note the bank cannot be a holder in due course for value. There are some propositions that are so well settled and clear that any attempt at argument in support of them is a useless expenditure of time. That a promissory note made and executed without consideration and received by the payee upon an agreement that the maker should never be called upon to pay the same is invalid in the hands of such payee and cannot be enforced against the maker is a proposition of that character."

Of course, such a defense could not be made when there is a valid consideration for the note. *Cochran v. Bowersox,* 188 Ill. App. 157; *First Nat. Bank of Beecher v. Wolf,* 208 Ill. App. 283; *Niblack v. Frank,* 209 Ill. App. 162.

In the case at bar there was a partial consideration, undisputed, and shown by both parties to the amount

of $1,200 moving from appellee to appellant for the note in question. Appellant, by her pleas, presented the issue of no consideration, and an entire want of consideration for the note, and appellant's proof does not support the pleas.

It is elementary that proof of partial failure or partial want of consideration for a negotiable instrument will not support pleas based upon a total want or failure of consideration. Section 10, chap. 98, Smith-Hurd Rev. Stat. [Cahill's Ill. St. ch. 98, ¶ 10]; *Swain v. Cawood,* 2 Scam. (Ill.) 505, 506; *Wadhams v. Swan,* 109 Ill. 46; *Belden v. Church,* 23 Ill. App. 473; *Lake Superior Mineral Land Development Co. v. Clapp,* 50 Ill. App. 301; *Day v. Milligan,* 72 Ill. App. 324, 333; *Daniels v. Englehart,* 18 Idaho 548, 111 Pac. 3, 39 L. R. A. (N. S.) 938.

We do not understand that this statute, being a part of the Negotiable Instruments Act, prior to the passage of the Uniform Act of 1907, has been in any manner changed or modified by the passage of the later Act, and, that being so, the rules of pleading under the Act would remain undisturbed.

Appellant, having the burden of proof to show that the instrument in question was given for no consideration or was wholly without consideration, presented no testimony to cover that phase of the pleas. Where there is a consideration given for such an instrument, the payment of the note, or at least the consideration accruing to the maker, is, in law, the special purpose for which the note is given, and in such a case oral testimony tending to show an agreement that the payee would not look to the maker for payment, is, in effect, an attempt to contradict the terms of a written instrument by oral proof.

It was further testified to, on the trial, by Pogue, that when the note in question was given and delivered by Frank J. Parr to the bank, he, Pogue, canceled appellant's note for $5,340 and the five notes

that Frank J. Parr owed the bank, aggregating over $20,000, and delivered the canceled notes to Frank J. Parr; that Frank J. Parr gave his note for $8,000 and delivered the note of appellant for the sum of $17,917, the two notes equalling the indebtedness of Frank J. Parr and the appellant. Parr testifies that appellant's note for $5,340 was returned to him as before stated, and as to the notes he had owed at the bank, "his own notes," he testifies that he does not know whether he got them back or not. He states that, "I got some notes back, but I don't know." At another time Parr testifies that he has not looked, since this lawsuit started, to see whether he got the notes back or not and appellant testifies that she does not remember of receiving from any person the $5,340 note, after signing the $17,917 note, but this note was evidently returned to Parr. The indebtedness of Parr to the bank and of Parr and his brother to the bank, being for bona fide indebtedness, about which no question is raised, and the notes for the same and appellant's note having been returned to Parr canceled, there would be full consideration for the note in question.

The burden of proof being upon appellant to show want of any consideration for the note, appellant presented no testimony in that regard warranting a submission of such issue to the jury.

We do not think it was the purpose of the Legislature, in the enactment of section 16 [Cahill's Ill. St. ch. 98, ¶ 36], *supra,* to apply the terms of that section to instruments which were legal and lawful and given for a good and valid consideration accruing to the maker. Under the rules of law applied to appellant's pleas, there was no issue of fact to present to the jury in this case and the court committed no error in instructing the jury to find for the appellee.

The judgment of the circuit court of Macon county is affirmed.

*Affirmed.*