George R. McComb, as Receiver of Illinois Trust & Savings Bank of Champaign, Appellant, v. Frank B. Meade, Appellee.

Gen. No. 8,352.

Opinion filed February 3, 1930.

GREEN & PALMER, for appellant; HOMER SHEPHERD, GEORGE E. MARTIN and ORIS BARTH, of counsel.

BOYER & LEONARD and W. F. SIMONSON, for appellee.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This suit arises upon three promissory notes executed by appellee to the Illinois Trust & Savings Bank of Champaign, in the month of November, 1927. We shall denominate the parties as plaintiff and defendant and by their individual names. Later, in vacation, after the adjournment of the January term, A. D. 1929, George R. McComb as receiver for the insolvent Illinois Trust & Savings Bank of Champaign, Illinois, took judgment by confession against Frank B. Meade, trustee, upon three notes for $9,013.22 and costs of suit. Afterwards, at the April term, A. D. 1929, the defendant entered a motion to vacate and set aside the judgment, to stay the execution and for leave to plead. The court granted leave to plead and three pleas were filed. The first was the plea of general issue. The second and third were pleas of want of consideration; and it was also claimed upon the trial that the third plea made the defense that the notes were conditionally delivered. None of the pleas were verified.

Attached to the motion to vacate the judgment was the affidavit of Frank B. Meade, which recites that the judgment by confession was the result of the giving of the three notes set forth in the plaintiff's declaration; one for $3,500, dated October 17, 1927, due one year after date; one for $2,000, dated October 18, 1927, due six months after date; and one for $2,000, dated

November 23, 1927, due six months after date, all payable to the order of Illinois Trust & Savings Bank of Champaign, and all signed by affiant as trustee; that shortly prior to October 17, 1927, Schuler Bros. Confectionery Company, a corporation, was indebted to the Illinois Trust & Savings Bank, the payee in said notes, in the sum of $3,500; that the confectionery company went into bankruptcy, and that to avoid a loss on said indebtedness Edwin Filson, president of the Illinois Trust & Savings Bank, conceived the plan of buying the physical assets of the confectionery company at bankruptcy sale in conjunction with other of the creditors of Schuler Bros. Confectionery Company, and to put additional capital into the business and reorganize the same as a new corporation under the name of Nine Main Confectionery Company; that Edwin Filson, acting for and on behalf of said bank, asked affiant to put $1,000 into the enterprise and to assume the management thereof, and that pursuant thereto, the affiant, together with the said Edwin Filson, acting for the Illinois Trust & Savings Bank and other creditors of the Schuler Bros. Confectionery Company, entered into a contract, also attached to said affidavit and marked ''Exhibit A''; that pursuant to said contract the Nine Main Confectionery Company was organized as an Illinois corporation in the early part of October, 1927, and that the creditors of the concern, including the Illinois Trust & Savings Bank, not desiring their names to be known, paid in some $7,500 in cash referred to in said contract, ''Exhibit A,'' and that all of the stock of said corporation belonging to the various parties who had signed said agreement was assigned to the affiant as trustee until the business could be developed and the stock sold; that Edwin Filson, acting as president for the Illinois Trust & Savings Bank at the time said bank furnished $4,000 in cash, which it was obligated to furnish under said contract, asked affiant to sign the notes of $2,000

each, dated October 18, 1927, and November 23, 1927, attached to the declaration; that there was an agreement and understanding that affiant would not be liable personally upon the notes, and that his liability for the payment of the notes would be limited to whatever could be realized from the sale of stock of the Nine Main Confectionery Company, when, as and if the said stock was sold and disposed of; that the $3,500 note, dated October 17, 1927, on which judgment was confessed, was represented to affiant to be the amount of the old Schuler Bros. Confectionery Company notes due the bank, and was executed by affiant as trustee at the request of the said Edwin Filson as president of the bank; that there was an agreement with respect to this note that affiant would not be personally liable for the same, but that the same should be paid for out of the sale or disposition of stock of the Nine Main Confectionery Company; that affiant derived no personal benefit from the execution of the notes; that the only money paid by the bank as the result of the execution of any of said notes was the sum of $4,000, subscribed for by Edwin Filson on behalf of the bank under the contract, "Exhibit A," and that said sum of $4,000, together with the other contributions by parties to the contract, "Exhibit A," were deposited to the credit of the Nine Main Confectionery Company, a corporation, in the Illinois Trust & Savings Bank, and were checked out and disbursed on the corporate obligations of said corporation; that George R. McComb, receiver for the bank, was furnished with a copy of the agreement, "Exhibit A," shortly after his appointment; that he was charged with knowledge that the defendant assumed no personal responsibility and that the notes were without consideration and were accommodation notes.

After the issues were made up the cause was submitted to a jury and the defendant proved substantially such of the matters as were set forth in said

affidavit as are above recited, excepting that the plaintiff contended throughout the trial and upon the introduction of evidence that it was not competent or proper for the defendant to attempt to show or prove that there was an oral agreement that he was not to be personally responsible on the notes, it being the claim and contention of the plaintiff that the language in the notes was the measure of liability of the defendant.

By the terms of the written agreement attached to and made a part of the affidavit, the defendant Meade covenanted and agreed to purchase the personal property and fixtures of the old Schuler Bros. Confectionery Company for the benefit of the new corporation, and to secure a lease on the property at 9 Main Street, Champaign, Illinois, for the conduct of said business and to hold the said property and lease for the benefit of himself and other parties to the agreement, the costs and expenses of securing the lease and purchasing the property to be paid out of the common fund of $7,500 subscribed for and listed in said agreement; that he would cause the new corporation to be organized, and shares of stock to be issued as provided by said agreement, including the payment of attorney's fees, and that he would serve the said corporation for a term of 4 years, unless said business was transferred or sold, and for his services as manager he should receive the sum of $150 per month and in addition thereto 20 per cent of the net profits earned by said corporation in excess of $1,000.

The jury found a verdict for the defendant and the court entered judgment against the plaintiff in bar of the action and for costs and plaintiff has appealed.

Upon the trial of the cause defendant introduced the contract, "Exhibit A," which is as follows:

"It Is Hereby Agreed between Frank Meade, first party; and Edwin Filson, D. E. Harris, D. L. Huxtable, Carl Meneely and E. I. Burke (who are referred

to by their last names when mentioned individually hereafter), hereinafter collectively referred to as second parties, as follows:

"Whereas, Schuler Bros., and Schuler Bros. Confectionery Co., who are in bankruptcy, are indebted to the Illinois Trust & Savings Bank of Champaign, Illinois, whose interests are represented by the said Filson, and said bankrupts are also indebted to the said Harris, Huxtable, Meneely and to the Citizens State Bank of Champaign, whose interests are represented by the said Burke, in approximately the same proportions as the amounts hereinafter stated bear to each other.

"And Whereas, second parties desire to recoup their losses in said bankruptcy, if possible, by arranging for the reorganization and continuation of the confectionery business run by said Schuler Bros., the individual second parties contributing additional capital to the said enterprise in approximately the same proportion as the total amount of the indebtedness of the said Schuler Bros. and Schuler Bros. Confectionery Co. to them.

"And Whereas, first party is willing to contribute capital towards said enterprise and to assume for four (4) years the management of the said business as reorganized.

"Now Therefore, It Is Hereby Agreed that first party and second parties will furnish in cash, as capital towards said enterprise, the following amounts:

| | |
|---|---:|
| Filson | $4000.00 |
| Harris | 200.00 |
| Huxtable | 500.00 |
| Meneely | 500.00 |
| Burke | 1300.00 |
| Frank Meade (first party) | 1000.00 |
| Total | $7500.00 |

"It Is Understood that approximately fifty per cent of said contributions will be called for and paid at once, and that the balance may be called for at any time within the next thirty or sixty days, but that no amounts beyond the total contributions of Seventy-Five Hundred ($7500) Dollars above referred to shall be called for from the parties to this agreement, without the unanimous consent of all of them.

"First party covenants and agrees to purchase the personal property and fixtures of the said bankrupts above named for such price as they can be obtained at bankrupt sale, and also agrees to secure a lease on the property at 9 Main Street in Champaign, Illinois, and that said lease and said property purchased at said bankrupt sale shall be held by him for the benefit of himself and second parties, under this agreement, and the costs and expenses of securing said lease and of purchasing said property shall be paid for out of the common fund of Seventy-Five Hundred ($7500) Dollars aforesaid.

"First party further covenants and agrees to cause a Corporation to be organized with a capital stock of Twenty Thousand ($20,000) Dollars, which shall be paid for by the cash contributions of Seventy-Five Hundred ($7500) Dollars aforesaid, and the lease and personal property purchased as aforesaid, and upon the complete organization of said corporation, to transfer to the individual second parties, shares of the capital stock thereof, in the proportion of these contributions to the said fund of Seventy-Five Hundred ($7500) Dollars. If attorneys fees are not paid in cash, the amount of said fees shall be added to said sum of Seventy-Five Hundred ($7500) Dollars and stock issued for said fees in the same proportion.

"The names of the individual second parties shall not be mentioned or made known in the organization and carrying on of the business aforesaid, and they shall incur no liability in any way beyond the con-

tribution of the said fund of Seventy-Five Hundred Dollars aforesaid.

"First party covenants and agrees to serve said corporation as manager, for the term of four (4) years, unless, with the consent of at least two-thirds of the owners of the stock of said corporation, said business is transferred or sold to other parties within that period.

"First party covenants and agrees that his salary, as manager, shall be the sum of One Hundred Fifty ($150) Dollars a month, and in addition thereto, twenty per cent of the net profits earned by said corporation in excess of One Thousand Dollars, said net profits to be determined as return for income tax by said corporation, and to be paid within one month after the close of the calendar year ending December 31st each year, which shall be the fiscal year for said corporation.

"It is further understood and agreed that the wife of first party shall assist him in the conduct and management of the said store, at a salary of Twenty-Five ($25) Dollars per week.

"It is understood and agreed that D. E. Harris, as long as he shall serve said corporation as President, and shall assist in the management and advice in the conduct of said business, shall receive a salary of Twenty-Five ($25) Dollars per month. All salaries are to commence on the opening of said place for business.

"Should the said business prove unprofitable, upon the request of the holders of two-thirds in amount of the capital stock of said corporation, the business shall be liquidated and closed up.

"It Is Expressly Understood and Agreed that first party in buying the assets of the bankrupts, Schuler Bros., and Schuler Bros. Confectionery Co., and also in taking the lease on the said building at 9 Main Street, in Champaign, Illinois, and also in assuming the active

control and management of the said business, shall be acting as Trustee for the individual second parties, and that he will account faithfully to them at all times for the conduct and management of said business, and at their request, will render true accounts of the financial condition of said business and will not incur obligations and expenditures, beyond current expenses, for said business without the consent of at least a majority in amount of the capital stock of said corporation.

"In Witness Whereof, the parties have hereunto set their hands and seals this 14th day of October, A. D. 1927."

This contract was signed by all of the parties to the same.

Plaintiff further offered in evidence a written guaranty signed by Filson, the president, and McNevin, the cashier of the Illinois Trust & Savings Bank of Champaign, which was in the following terms:

"Guarantee.

"We hereby guarantee Frank B. Meade against any loss whatever on account of any notes signed by him to the Illinois Trust & Savings Bank signed as Trustee, it being understood that the said notes so signed are all for the benefit of the undersigned.

"This agreement shall extend to notes signed this date or renewals thereof or notes signed hereafter, but the total amount shall not exceed Eight Thousand Dollars.

"Witness our hands and seal this 17th day of October, A. D. 1927.

Edwin Filson.    (Seal)
H. E. McNevin.    (Seal)

"At the bottom of said guarantee appears the following, which was crossed out: 'Illinois Trust & Savings Bank of Champaign, Illinois. By
....................｜........President.' "

Defendant paid in the $1,000 which he subscribed to the new business and the creditors respectively paid in the several amounts subscribed by them. This was substantially the testimony submitted to the jury.

It is contended by appellant that there was some consideration for said notes accruing to the defendant, and that oral testimony tending to show an agreement that the payee would not look to the maker for payment is an attempt to contradict the terms of a written instrument and that the testimony was not admissible, citing *Farmers State Bank & Trust Co. v. Parr,* 234 Ill. App. 78, 86. The defendant had testified as to his talk with Filson in regard to the $3,500 note: "He told me this $3,500 note represented the Trust & Savings Bank loss in the Schuler Brothers Confectionery, and that it was to be placed along with the stock of the new corporation, and the other $2,000 was the money that the Trust & Savings Bank was now putting in the new organization." There was nothing in the proofs to show that the defendant knew anything about the affairs of the bank other than that it was sound and solvent. The entire action on the part of the bank and its officers was shown to be a move to recoup its losses and collect its debt, or a portion of the same, out of the assets of its debtor. There was no fraud shown or any action taken other than to aid and enhance the interests of the bank, its stockholders and creditors. There is no contradiction as to any of the testimony. The defendant signed the notes as "Trustee" and otherwise in all matters acted as a trustee. What consideration for these notes could have accrued to the defendant? The defendant, by the contract, had agreed to contribute his services as manager for the sum of $150 a month, and in addition thereto for his services was to receive 20 per cent of the net profits over and above the sum of $1,000. The giving of these notes neither added to nor detracted from de-

fendant's salary. Under the terms of the contract, the first party (defendant) and the second parties, including Filson for the bank, had agreed to furnish in cash as capital towards said enterprise, the following amounts:

"Filson for the bank, $4,000.

"Frank Meade (first party) $1,000."

Each party put in these respective amounts; this each was required to do under the terms of the contract and not by reason of the obligation of any note. If by putting in these respective amounts there were accruing net profits over and above the 20 per cent, then the accruing net profits on the $4,000 put in by the bank accrued to the bank and not to the defendant, the same as the net profits on the $1,000 put in by the defendant accrued to the defendant and did not accrue to the bank. Appellee (defendant) had no interest in the sums of money put into the new business venture corporation, whether such sums were paid in under the contract or the note. Neither can it be said that oral testimony was necessary to establish the true facts in this case. Filson was president of the bank and had authority to act for the bank. The bank was a party to all of the written agreements in evidence, including the notes. The contract, Exhibit A, recites that the interests of the bank in the entire matter are to be represented by its president, Filson, and the bank was a party to that contract and it was especially recited that the "Names of the individual second parties shall not be mentioned or made known in the organization and carrying on of the business aforesaid." Filson's name was mentioned as representing the bank and as to the "names of the individual second parties" not mentioned, the whole contract showed them to be the two banks. The guaranty signed in writing by Filson, the president, and by H. E. McNevin, the cashier of the bank, on the day the first

note was given was signed in pursuance of and by the authority given in the contract, "Exhibit A," and is, in this suit, the guaranty and the covenant of the bank and shows plainly why defendant signed the notes as trustee. He was merely acting for the bank and would not have signed the notes if the written guaranty and covenant of the bank "not to sue" had not been given. This contract, guaranty and the notes must all be construed as parts of one transaction. *Gould v. Magnolia Metal Co.,* 207 Ill. 172, 175, in which it is held: "It is the rule that testimony is inadmissible to contradict or vary the terms of a contract which purports to contain the whole agreement of the parties and shows no uncertainty as to the object or extent of such agreement. In such a case it is conclusively presumed that all previous and contemporaneous engagements by which the parties intend to be bound are contained in the writing. On the other hand, it is equally well established that where the agreement is evidenced by more than one writing, all of them are to be read together and construed as one contract, and all the writings executed at the same time and relating to the same subject matter are admissible in evidence. (*Stacey v. Randall,* 17 Ill. 467; *Gardt v. Brown,* 113 Ill. 475; *Crandall v. Sorg,* 198 Ill. 48; 1 Greenleaf on Evidence, sec. 283.) In this case the writings were executed as different parts of the same agreement and related to the same subject matter." There was no consideration for the notes in this case and under sections 16 and 58 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶¶ 36 and 78 (*Straus v. Citizens State Bank,* 164 Ill. App. 420; *Straus v. Citizens State Bank,* 254 Ill. 185; *First Nat. Bank of Harvey v. Trott,* 236 Ill. App. 412), plaintiff had no cause of action upon which suit could be brought.

It is contended by appellant that the pleas of the defendant should have been verified in order to deny

the delivery, which is a part of the execution of the note. That rule does not apply to the facts in this case. It is not claimed that the delivery of the note was conditional. (*Gould v. Magnolia Metal Co.*, 207 Ill. 172; *Great Western Tel. Co. v. Loewenthal*, 154 Ill. 261, 266; *Frankland v. Johnson*, 147 Ill. 520.)

In *Gould v. Magnolia Metal Co., supra,* the court held on page 175: ''The first objection to the letter is, that it was not admissible, under the pleadings, because the contract was set out *in haec verba* in the declaration and its execution was not denied under oath, as provided by section 34 of the Practice Act. It is argued that by failing to deny the execution of the contract as set out, defendant admitted that it constituted the whole contract and agreement between the parties, and that if defendant claimed it was not the whole contract it should deny its execution. That section of the Practice Act establishes a rule of evidence, and dispenses with proof of the execution of a written instrument declared upon unless the execution is denied by a verified plea. The execution of the contract as set out in the declaration was not, and could not truthfully be, denied by the defendant, and the letter did not tend to make a new or different contract or substitute another one. The only effect of failing to deny the execution of the contract was to make it admissible in evidence without proof of its execution. A verified plea was not necessary to permit the introduction of evidence explanatory of its meaning.''

Finding no error in the record, the judgment of the circuit court of Champaign county is affirmed.

*Affirmed.*